United States District Court
Northern District Of Texas
Fortworth Division

Maribel Santana-Cerano,
Plaintiff

4-24CV-403-Y

-V-

Case No.: 4:19-CR-00488-001
Judge: Hughes
New Judge-Charles Eskridge

1. Warden Rule
2. Mr. Cates ;
3. Nurse Nodiand ;
4. Doctor Okohpal
5. Nurse Sancho Polo ;
6. Dr. Bollinger ;
7. Officer Maderin ;
8. Dr. Barthett ;
9. Nurse D. Hollan ;
10. Nurse D. Kunilksz ;

11. Mrs. Games

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY - 7 2023
CLERK, U.S. DISTRICT COURT
By_____
Deputy

Complaint With Jury Demand
Introduction

This is a civil rights action filed by Maribel Santana-Cerano, a federal prisoner, for damages and injunctive relief under 42 U.S.C. §1983, alleging denial of medical care, cruel and unusual



punishment, unnecessary and wanton infliction of pain, and deliberate Indifference, along with failure to carry out medical orders all in violations of Ms. Santana Corano's Eighth Amendment rights. The Plaintiff seeks an injunction and damages pursuant to the Americans with Disabilities Act and the Rehabilitation Act.

Jurisdiction
II.

1) The Plaintiff is housed in FMC-Carswell in Fortworth, Texas;

2). Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States.

3). Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 (a)(3) in that this action seeks to redress the deprivation under color of state law, of rights secured by Acts of Congress providing for equal rights of persons within the jurisdiction of the United States.

4

3). The Plaintiff filed an administrative tort claim concerning the occurrences complained of on December 1st of 2022, within two years after those occurrences, and brought suit within six months of the mailing of the notice of final agency denial of that claim, as required by 28 U.S.C. §2401.

## Parties III.

4). Warden Rule;

Doctor Okehlal

Doctor Bollinger

nurse Nodiand

Mr. Cates

nurse Sancha Bilo

officer Maderin

Dr. Bartholf

nurse D. Hallan

nurse D. Kunikosz

Ms. Games

## IV. Factual Statement

See attachment "Exhbit A" for being timeline. The Plaintiff offers the following facts not shown on "exhbit A".

1) See photographs labeled "exhibits B", "C", "D", "E" as evidence of the extreme suffering this Plaintiff has been subjected to (and is ongoing as of April 20th, 2024).

2) The Plaintiff continues to make attempts to obtain medical supplies to provide self-care to no avil.

3) Infection still ravages the area and leaks out onto the Plaintiff's clothing, bedding and covers her right buttock and upper right leg. Plaintiff has to endure daily humilations.

4) The Plaintiff complains to medsurge nurse, and is told to go away or to go to sickcall the following day when her pain levels are more than the Plaintiff can bare.

5) The Plaintiff has sought help multiple times through Warden Asik at mainline only to be told, "I'm not medical take your problem to them, goodbye" and, "I've told you already talk to medical I'm not a doctor"

6) Plaintiff was refused gause 4 times and was forced to seek out new socks (never used) from other prisoners to attempt to cover leaking wound.

7) Plaintiff suffers headaches throughout the day and 6 out of seven nights a week while lying down in bed. There is no support on the hard thin mattress and this causes further pain.

8). Pain becomes so unbearable the Plaintiff will have to forfiet all sleep and stand up through the night in her cell and lean against her locker to remove the straith in her buttocks and right leg.

9). The Plaintiff is forced to forego walking the distance to the chowhall for meals due to the unbearable pain and humiliating leakage.

10) The Plaintiff has requested to take a pillow or to be provided an air cushion to sit ontop of the metal seats in the chowhall, medical departments, and outside, she has been refused and threatened with an incident report if she was to bring a pillow to possibly afford herself some relief.

11). Medical reports have been falsified claiming she was provided care when infact she was refused care.

12). Fake claims by FMC Carswell were made that they had a wound vac inorder for her wounds to be properly treated when infact Carswell did not have said important medical equipment.

13). Medical providers witnessed Plaintiff

body tearing apart and rottening away and said, "What do you want us to do?"

14). The Plaintiff was placed with another prisoner in solitary confinement with no medical care or anyway to conduct self care. Open wounds grew major infections and pain became overwhelming as Plaintiff's body tore open and infection spread. (review photographs)

15). Plaintiff is refused clean bedding. Plaintiff's ordered to keep soiled bedding until her housing units (one day a week) exchange. Therefore Plaintiff is forced to sleep covered by soiled sheets and blankets.

16). Plaintiff is taunted by staff members who call her "gross" and "a problem".

17) FMC Carswell denies outside medical orders.

17). FMC Carswell attempted to force Ms. Santana to go into a surgery with zero medical consultation, examination or awareness of surgery or the new surgeon Carswell had chosen. This instilled great fear by Plaintiff who was informed by first surgeon to the difficult nature of her needed surgeries. Carswell demanded Plaintiff sign a refusal. Plaintiff explained the need for consultations, examinations, and lab work that medically was needed prior to pushing her onto a table for surgery with an unknown doctor.

18) Plaintiff has been left with no aide in cleaning or changing wound dressing. Medical instructed Plaintiff to find another inmate to help her.

19) A week later Plaintiff is still in cruel pain and humiliations.

20) Emergency doctor refused to return Plaintiff to FMC Carswell care.

16

21) FMC Carswell failed to take two times to surgery appointments.

22) Medical provider threatened Plaintiff by refusing to answer Plaintiff's cries for help by stating, "Shut up or I'll have you sent to the SHU"

23) Medical Director walked away from Plaintiff when she attempted to inform her of the abuse and neglect.

24) Plaintiff requested administrative remedy on several occasions and was told, "you're not getting shit"

Argument V

The Eighth Amendment, which forbids "cruel and unusual punishments," governs the treatment of convicted prisoners. U.S. Const., Amend. VIII. This Plaintiff shows both an "objective component," the seriousness of the challenged conditions, and the "subjective component," the state of mind of the officials who are responsible for them. Frames V. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994); Wilson V. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321 (1991).

The Plaintiff acknowledges that prison conditions that are "restrictive and even harsh are part of the penalty that criminal offenders pay for their offenses against society." Rhodes V. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392 (1981).

Ms. Santana-Cesano presents that amount to "the unnecessary and wanton infliction of pain." Rhodes V. Chapman, 452 U.S. at 347; Wilson V. Seiter, 501 U.S. at 297.

With respect to living conditions, Ms. Santana-Cesano demonstrates "unquestioned and serious

deprivations of basic human needs," and of the "minimal civilized measure of life's necessities" to establish her Eighth Amendment violations. Rhodes V. Chapman, 452 U.S. at 347; accord, Wilson V. Seiter, 501 U.S. at 308. The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[]" Helling V. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475 (1993)(citing DeShaney V. Winnebago County Dep't of Social Services, 489 U.S. 189, 199-200, 109 S. Ct. 998 (1989)).

The lower courts have also mentioned sanitation and personal hygiene. Palmer V. Johnson, 193 F. 3d 346, 352 (5th Cir. 1999) (quoting Novak V. Beto, 453 F. 2d 661, 665 (5th Cir. 1971); Carver V. Bunch, 946 F. 2d 451, 452 (6th Cir. 1991); Hoptowit V. Ray, 682 F. 2d 1237, 1246 (9th Cir. 1982); Wolfish V. Levi, 573 F. 2d 118, 125 (2nd Cir. 1978); Newman V. Alabama, 559 F. 2d 283, 291 (5th Cir. 1978).

and sleep. Harper V. Showers, 174 F. 3d 716, 720 (5th Cir. 1999); Merritt V. Hawk, 153 F. Supp. 2d 1216, 1228 (D. Colo. 2001).

Ms. Santana-Cesano's treatment while

in custody through denial of medical care, denial of medical supplies, refusal of clean bedding constant humiliation, threats by correctional staff members, refusal to transport two times for serious surgeries, complete disregard to hygiene needs for massive open rotting flesh. Forced standing of mind-blowing pain, loss of sleep due to having to stand to find relief from screaming pain in buttock and leg has been nothing other than unjustifiable, humiliating and "antithetical to her human dignity". Hope V. Pelzer, 536 U.S. 730, 738 (122 S.Ct. 2508 (2002) (citing unnecessary pain caused by handcuffs and the restricted position of confinement in holding the "hitching post" punishment unconstitutional). Hope V. Pelzer, 536 U.S. at 738, 745.

Clearly is unnecessary pain caused by handcuffs and the restricted position of confinement the prisoner suffered unwarranted a Eighth Amendment violation then the continuous severe pain of rotten away flesh and continuous ongoing infected, infections, refused clean bedding refused changing of medical gauzes to keep open gaping wounds clean, total sleepless nights,

constant humiliation of leakage, relying upon other prisoners to assist in cleaning soiled garments, repeated loss of meals due to walking and then sitting on metal stools equaled crippling pain surely warrants a extreme violation in Ms. Santana-Cerado's Eighth Amendment rights in the eyes of this court and the Constitution!

Some recent Supreme Court decisions concerning prisoners' Eighth Amendment claims have emphasized physical harm or the risk of it. The Court held that unsafe conditions that "pose an unreasonable risk of serious damage to [a prisoner's] future health" may violate the Eighth Amendment even if the damage has not yet occurred and may not affect every prisoner exposed to the conditions. Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475 (1993) ("a remedy for unsafe conditions need not await a tragic event").

Ms. Santana-Cerano's has suffered serious damage thru the unsafe conditions of a medical facility that falsely stated they had correct medical equipment to provide care needed, medical staff that refuses to correctly

care for major open wounds, prison staff members who refuse clean bedding, forcing her to cover in infection covered sheets and clothing, refusal of medically required quarts needed to pack and cover wounds, the complete allowance of flesh to rip and rotten away exposing a almost full implant, refusal two+3 times to take prisoner to surgeries, humiliations repeatedly by staff members, refusal to speak to Plaintiff because "she's a bother" "complains to much about pain", and more..

Ms. Santana-Cerano's future health is not secured and her body can not be restored to normal due to Caswell's indifference and neglect. (See E.R. Doctors findings) Furthermore, the Plaintiff with her open wounds is exposed to filthy living conditions and mold covered walls and shrouds. It is a ticking time bomb for this Plaintiff that violates her Eighth Amendment rights and the Supreme Court has made it clear that "a remedy for unsafe conditions need not await a tragic event". See. Helling V. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475 (1993).

The Eighth Amendment standard "draws its meaning from the evolving standards of decency that mark the progress of a maturing society." Rhodes V. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, (quoting Trop V. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590 (1958)); accord, Helling V. McKinney, 509 U.S. 25, 36, 113 S.Ct. 2475 (1993). In cases involving risks to health or safety, courts must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." In other words, the prisoner must show that the risk of which the complains is not one that today's society chooses to tolerate." Helling V. McKinney, 509 U.S. 25, 36, 113 S.Ct. 2475 (1993); see Baze V. Rees, 553 U.S. 35, 128 S.Ct. 1520, 1532 (2008).

No rational society would view Ms. Santana Cesano's treatment, lack of treatment, or photographic evidence of such as a tolerated standard in today's society and to show her claim the photographs are presented to this Honorable Court and have been presented to society.

§ 2.1 Administrative Discretion in the Prison Context.

"Bad judgments, blatant violations of elementary principles of human dignity, and naive concepts and applications of nineteenth-century justice by prison officials have made judicial intervention into the -correctional process inevitable." Articulated by Professor Kenneth Culp Davis of the University of Chicago Law School. He is often referred to as the "Father" of administrative law in the United States.

Prison official exercises discretion whenever the effective limits on his power leave him free to choose among several courses of action including the choice of taking no action. He determines facts, applies law or policy, and acts according to his personal dictates after the facts and policy are known. The act may cause an injustice. This injustice results from the failure to obtain the true facts, erroneous application of law or policy, or lack of knowledge, or an act in which personal bias, prejudice, and disregard of laws and policy play the predominant motive. The result is judicial intervention.

In place of identifying, facing, and resolving problems through the creation and implementation of policy, the result has too often been indecision, vagueness, and abrogation of responsibility. As nature abhors a vacuum, this failure of prison administrators to offer direction results in the least trained staff person exercising the broadest of discretion, often with disastrous results.

This Plaintiff has suffered and continues to suffer by the FMC Carswell staff and medical members who make continuous disastrous decisions regardless of factual serious medical needs and through their personal broad discretion and basis of "a prisoner" the exercising of laws and policies are not upheld which has allowed cruel and unusual treatment.

Alone and in combination have allowed a "mutually enforcing effect" to violate Ms. Santana-Cerano's Eighth Amendment rights. Prison officials cannot "trade-off" unconstitutional conditions under this theory. If one condition is cruel and unusual the fact that other conditions are better will not save prison officials from Eighth

Amendment liability.

Especially degrading conditions like humiliation, body rotting slowly, painfully away, and fighting nonstop infection with life-time disfigurement; refusing basic medical care, refusing serious medical care, restricting much needed self-care, and constant mind blowing pain as your body rips apart are unconstitutional even if imposed for short periods of time. See, e.g., Hope v. Pelzer, 536 U.S. 730, 738, 122 S.Ct. 2508 (2002)(holding "hitching post" restraints for seven hours violated Eighth Amendment); Surprenant v. Rivas, 424 F.3d 5, 19-20 (1st Cir. 2005) (holding three weeks in segregation under unsanitary conditions would violate detainees' due process rights, which were held equal to Eighth Amendment protections).

## Deliberate Indifference

Deliberate indifference in Eighth Amendment cases such as Ms. Santana-Carano's show that her case facts meet the requirements of deliberate indifference. These Eighth Amendment cases fall somewhere between mere negligence (carelessness) and actual

malice (intent to cause harm). That is, it amounts to recklessness.

Ms. Santana-Cerano has presented overwhelming evidence that officials disregarded a risk that was obvious, therefore the Court should not grant summary judgment against Ms. Santana-Cerano, she should have her right to a trial.

Chronic pain constitutes a "continuing violation" and is not barred by any statute of limitations as long as the medical need remained untreated. Canedy V. Boardman, 16 F. 3d 183 (7th Cir. 1994)

The deliberate indifference standard of Estelle V. Gamble embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Second, the charged official must act with a sufficiently culpable state mind. More specifically, a prison official does not act in a deliberately indifferent manner unless that official knows of and disregards an excessive risk to

prisoner health and safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also draw the inference.

In Hathaway v. Coughlin, 69 F. 3d 1414 (7th Cir. 1995) the second Circuit applied these standards and held that a prison doctor was deliberately indifferent to the prisoner's serious medical needs in that he knew of and disregarded an excessive risk to his health. Also see Ricketts v. Ciccone.

Prison officials were held deliberately indifferent to a prisoner's medical needs when his dentures were not given to him. This resulted in an inability to chew or eat properly as well as bleeding, headaches, and disfigurement. Also, he was not given his heart medication, resulting in heart "fluttering" due to lapse in medication, and severe chest pain.

Looking at Ms. Santana-Cannon's case, no reasonable jurist could find that the long disregard to her medical needs that allowed this poor woman's body to rotten slip and stay in serious infected disfiguring wounds and loss of implant to be a breather the name officials each did not have knowledge of, therefore, their treatment and lack of treatments are deliberate and indifferent to her serious dangerous basic human needs. Her condition reached a level as not publicly acceptable it "shocks the conscience." LaMasca v. Turner, 995 F. 2d 1526 n.21 (11th Cir. 1993)(holding warden's "supervisory role and the insular character of prison communities" supported inference of knowledge of "apparent" conditions).

The defendants need not know the precise nature of the risk to be found deliberately indifferent, as long as he or she knows that a serious risk exist. Velez v. Johnson, 395 F. 2d 732, 736 (7th Cir. 2005)(holding an officer who knows of a risk of assault could not escape liability by arguing that he didn't know the assault would be a rape).



(See Plaintiff's self kept notes that show that officials acted with knowledge of her medical serious needs to a high degree of deliberate indifference).

Furthermore, the Plaintiff has stated that she has been refused medically needed hygine products and clean clothing and bedding because her open wounds would leak bodily fluids, infections, and blood.

Prisons are required to provide for clean clothing (see Benjamin V. Fraser, 161 F. Supp. 2d 151, 178 (S.D.N.Y. 2001), aff'd in part, vacated and remanded in part on other grounds, 343 F.3d 53 (2d Cir. 2003), accord, Barney V. Graves, 257 F.3d 1164, 1169 (10th Cir. 2001) (evidence of fecal contamination of blankets and clothing raised an Eighth Amendment issue, though officials were not shown to be deliberately indifferent); Divers V. Dep't of Corrections, 921 F.2d 191, 194 (8th Cir. 1990) ("adequate laundry facilities" required).

In this case laundry refused to permit her to replace soiled bedding and clothing

for a week at a time, she was told "don't fill your units one day a week laundry, I don't care if your stuff's soiled".

This was humiliating and unsanitary.

The Plaintiff has suffered denial of access to medical personnel qualified to exercise judgment about her serious medical needs. In this case the Plaintiff was even denied two scheduled surgeries by a doctor who had conducted examines, consults and tests on her. She suffered only access to medical personnel without specialized expertise, medical qualifications or training needed to treat and provide care to this Plaintiff. Hartsfield v. Colburn, 371 F. 3d 454, 457 (8th Cir. 2004)(holding six weeks delay in sending prisoner to a dentist, resulting in infection and loss of teeth, raised an Eighth Amendment claim); LeMarche v. Wisneski, 266 F. 3d 429, 440 (6th Cir. 2005)(failure to make timely referral to specialist as well the patient to seek one out was deliberate indifference); Spruill v. Gillis, 372 F. 3d 218, 237 (3d Cir. 2004)(allegations that medical

personnel refused to examine plaintiff on multiple occasions and accused him of "playing games" supported claims of indifference.);

Tillery V. Owens, 719 F.Supp. at 1206, 1308 (citing "cursory" sick call inquiries and intake physical examinations that were not "thorough" and in which the patient was never touched) and See also McKenna V. Wright, 386 F.3d 432, 437 (2nd cir. 2004).

This Plaintiff has been threatened with the SHU if she complained "one more time" by medical nurses listed and refused any medical supplies more often then not and medical staff named herein has refused repeatedly to change wound bandages even telling the plaintiff to "find someone in the unit or figure your shit out." (See personal notes and affidavit by the Plaintiff. See the photographs - no person would willingly allow this to happen to their body.)

(See Exhibit of administrative remedies and emails unanswered)

(See medical records artate layout by R.n.)

## Requested Relief
### VI.

The Plaintiff must live in a clean safe invuroment to ensure infections are able to be contoled. Plaintiff requires several surgeries and will require ongoing expert medical care. The request release from prison; medical expenses paid for inregards to any and all surgeries to do with right leg and butteck; For pain and suffering and mental and physical disfigurments the judgment in the sum of 4.1 million dollars; And the loss of the defendants employment and her case to placed on their records for the public's knowledge.

## Conclusion

There is zero question this Plaintiff has and continues to be the subject of severe pain, humiliations, medical serious needs and now comes before this Honorable Court with photographic and written evidence of the Eighth Enviornment Violations carried upon her. She humbly asks this Court to Grant her

Certificate of Service

I, the undersigned do hereby certify this foregoing motion has been sent to the Clerk of this Court via certified prepaid postage affixed. Further she requests copies be provided to all parties via the Cm/ECF system as she is detained and has no other means.

Done This 23rd Day of April 2024

Humbly,

x /Maribel Santana Corano

List of mistakes

1.- I was no Place in a medical center or unit to make my Quarentine I was drainning a big amount of Puss and was not Place in the right Place to get treament.

2.- I was Place after my Quarentine in 1 Nort unit 2nd tier with a no Climming Pass so I can use the elevator.

3. I was cleaning my wound my Self on a dailly bassis with out the proper and Suficient materials that they will not Provide tome and if I get some materials I had to walk my Self to Clinic to get em. I was draining 24/7

4. I never Saw my medical Provider and did not was assisted by one only nurses still to this date dont Know who's my Care Provider.

5.- they couldt manage my Paint they only giving me meds that dont do any effect on me that I have been taking for months

Based on Your hand book that ya'll Provide me went I arrive here this are my rights and I Send a copy of them attach.

on Joy 25. 2023 ms. thimmons from Risical therapy clean my wound wint a prissoner help that days later she was taking about my body to Population and went I complajn about it they move her to a different unit.

②  nurse  Vodland call me lier about my paint
awards treat me bad

May 19 2022
nurse = OKoh Pal and Sancho POW see me went I arrive
to carswell bot denite me for treatment because they
Said I have to quarentine first.


6-23-22
out of quarentine I go to clinic for help and
Dr.nurse  D Kuniks2 and chakoFer (nurse)
Said they need to send me to emergeny room and
that I have to writte nurse okoh Pal for
denite me treament went I arrive



Dr. Bollinger.
~~Foods~~ never send me to my
Surgery

(names
of
nurses
doctor)

June 21 talk to colon nurse Supervisor
and said he can't do anithing for me
that I have to wait for Surgery day

~~July~~ 19 June
Oficer. Madertin make me sing the Surgery
PaPPers bot never Submited them and I miss
my aPPoiment She call me lier


Juy 1
I come back to Carswell and Dr. Barthett
and nurse D Hollan Said they make a
mistake about be ready with the wounel vac
and that hospital never call them.



June 21 I talk to mrs. Games
medical aiministration and treat me
really bad and Sent me back to my
unit but later went She veryfy
my name and ~~aese~~ medical cove
Se Call me and Said She was Sorry
and She Promise me to Send me
for Sorgery


nurse : D Koniks2
  She always toll me You are a
  baby cry you Just have to <u>Suck it in</u>
   till you Sorgery
                    ( I hate this lady )

I first came to FMC May 18th and I was in quarantine for 17 days. I was sent here because I needed treatment on an absess on my right side. When I was in quarantine I was told nothing could be done to help me until after I was out of quarantine.

The two that told me this was Nurse Sancho Polo and Doctor OKohPal however at this time I was draining puss from the Absess.

When I was released to Unit 1 I went to the Clinic to ask for treatment because no one called for me and I was in so much pain and the absess doubled. As soon as the doctor she asked which doctor saw me during quarantine and she admitted he made a mistake and I needed to write the doctor and nurse that made the mistake, then I was sent to the emergency room

adcd'r    admitted

②

2

they made an appointment for me to come back to have surgery done immediately.

They brought me back and told me they were going to take me back to get it done and take care of me. Two weeks later it grew even bigger and another absess came up next to the other. I show up at the clinic with even more pain, and they take me again to the emergency and nothing gets done except another appointment and the doctor at the emergency room puts a note on my folder for a scheduled surgery that I don't get taken to.

They called me to sign the papers stating I was going to surgery but the next day they say it was a mistake.

①

I first come to FMC May 18 2022 and I was in qoarentine for 17 day not in a medical unit. I was send here by my judge because i need medical tkeatment on a absses on my right Side I was toid nothing couid be done to heip me unit after i was out of Quarentine. Then when I was reiease 17 days later I was sent to a regular unit at 1 North 'not' a medical unit, I went to the ciinic asking for heip because I was in So much pain and the absses doubie. The nurse that See me Said it was not true that they have to wait for me to finish Quarentine to 6et treament that I need to report them and She Send me to the ER imcdiatly. the ER send me back after treament and Send appoiment for Sorgery but they never take me back to hospital, 2 weeks later another obsses came up I show at the ciinic again and send me back to the ER and again I was Send back with speciais instructions to come back for emergency surgery but again never Send me back. then on June ___ they send me to a wound ciinic but the ciinic Send me to the emergency room were they Said I never came back for my Sorgery and I get admitted and had Sorgery 2 day later after treament for infection but after Sorgery doctor toid me he was anable to do anithing for my Skin because

I have to much damage and it was imposible to close my skin, I ended up with a giagant absses and nerve damage Permanent. I been in a wound Vac and still in medical unit for 5 months arcady my damage is inreparable and my apperance is horrible I have a deep depresion due that Iam not gonna be the same again this could be prevent if they could take care at the time needed and I am askin for answers of who is responsabic for what happend to me. I will never be able to reconstruture my self.

I have all the medical records and pictures to prove all the mistakes that they make in my Case and I have witnesses of what happend to me Since I inlue here. Please check all the docoments I send and if need more records I have them.

thank you

Maribel Santana C

I have my records from my doctor outside that show what simple my treament was and that everything that happend to me was because of how long they take to Give me the right treament.

TRULINCS  99877479 - SANTANA-CERANO, MARIBEL - Unit: CRW-H-N

-----------------------------------------------------------------------------------------

FROM: Hernandez, Rebeca
TO: 99877479
SUBJECT: TO: Health Services Admin
DATE: 04/03/2024 12:51:07 PM

TRULINCS 99877479 - SANTANA-CERANO, MARIBEL - Unit: CRW-H-N

FROM: 99877479

TO: Health Services Admin
SUBJECT: Request to Staff SANTANA-CERANO, MARIBEL, Reg# 99877479, CRW-F-ADATE: 05/18/2023 12:31:12 PM

To: GAMEZ

Inmate Work Assignment: n/c

MS GAMES I BEEN MOVING TO ONE NOTRTH TODAY AND I DONT UNDERSTAND WHY BECAUSE I HAVE A
OPENWOUND INFECTED AND WAITING TO HAVE SURGERY AGAIN THIS IS EXACTLY WHAT HAPPEND THE FIRST
TIME ICAME TO CARSWELL THEY PUT ME IN ONE NORTH AND END UP LIKE THIS IAM REALLOY SCARE TO GET
WORDSAGAIN LIKE THE FIRST TIME AND HOW I SUPOST TO CLEAND MY WOUND THERE IN PUBLIC POPULATION
RESTROMWITH NO SANATATION.

NOTE: Wound did infact become reinfected
as Plaintiff feared.

Defendant never responded and move to
unit one north occured.

TRULINCS 99877479 - SANTANA-CERANO, MARIBEL - Unit: CRW-H-N

------------------------------------------------------------------------------------------------

FROM: Hernandez, Rebeca
TO: 99877479
SUBJECT: To: GAMEZ
DATE: 04/03/2024 12:51:07 PM

TRULINCS 99877479 - SANTANA-CERANO, MARIBEL - Unit: CRW-H-N

FROM: 99877479
TO: AW Medical

SUBJECT: Request to Staff* SANTANA-CERANO, MARIBEL, Reg# 99877479, CRW-H-NDATE: 06/07/2023 04:43:24 PM

To: GAMEZ

Inmate Work Assignment: NC

MRS GAMEZ I WAS TOLD BY YOU THE DAY I WENT LOOK FOR HELP FOR MY WOUND TO NCC1 THAT THIS PASTMONDAY DOCTOR FROM OUTSIDE WERE COMING AND YOU PUT A NOTE FOR THEM TO SEE ME AS URGEN WELLNO ONE HAS CALL ME TILL TODAY I SHOW MY SELF TO SICK CALL ON THURSDAY 1 BECAUSE I WAS IN REALLY PAINAND NURSE CLAIN TALK TO ME AND PRESCRIBE ANTIBIOTIC WITH OUT EVEN CHECK MY WOUND I COMPLAIN TOANOTHER NURSE AND 2 HOURS LATER HE CALL ME BACK TO CLINEC AND SAID HE FORGET TO CHECK MY WOUNDHOW CAN HE THEN PRESCRIBE MEDICATIONS WITH OUT KNOW ANYTHING OR SEEN MY WOUND IAM ONANTIBIOTIC THAT I READY KNOW DONT WORK FOR ME MY PAIN ITS BAD AND HAVENT HEAR NOTHING FROM NO
BODY

TRULINCS 99877479 - SANTANA-CERANO, MARIBEL - Unit: CRW-H-N

---------------------------------------------------------------------------------------------

FROM: Hernandez, Rebeca
TO: 99877479
SUBJECT: Medical Records 06/02/2023
DATE: 04/04/2024 04:06:09 AM

Bureau of Prisons
Health Services
Clinical Encounter
Inmate Name: SANTANA-CERANO, MARIBEL Reg #: 99877-479
Date of Birth: 11/26/1976 Sex: F
Provider: Cates, D. PA
Race: WHITE Facility: CRW
Encounter Date: 06/02/2023 11:52 Unit: H02
Mid Level Provider - Sick Call Note encounter performed at Health Services.
SUBJECTIVE:
Chief Complaint: GENERAL
S: inmate comes to sick call with c/o drainage from post operative wound that is chronic in
nature. She states it started about 4 days ago. No fevers or chills. She is very upset that she
is back in the high rise.
O: NAD appears well
Integ: 2mm round hole wound noted in fold of scar on buttock, the is some scant greenish
discharge on the bandage. No expressible discharge at wound.
A: STI
P: will rx doxycycline x 14 days. RN covered with mepilex
Subjective:
Pain:
COMPLAINT 1 Provider: Cates, D. PA
No
OBJECTIVE:
Temperature:
Date Time Fahrenheit Celsius Location Provider
06/02/2023 07:57 CRW 97.9 36.6 Oral McKinney, Kevin Medication Tech
Pulse:
Date Time Rate Per Minute Location Rhythm Provider
06/02/2023 07:57 CRW 62 McKinney, Kevin Medication
Blood Pressure:
Date Time Value Location Position Cuff Size Provider
06/02/2023 07:57 CRW 120/76 Left Arm Sitting Adult-regular McKinney, Kevin Medication
SaO2:
Date Time Value(%) Air Provider
06/02/2023 07:57 CRW 98 Room Air McKinney, Kevin Medication Tech
Weight:
Date Time Lbs Kg Waist Circum. Provider
06/02/2023 07:57 CRW 157.0 71.2 McKinney, Kevin Medication Tech
ASSESSMENT:
Local infection of the skin and subcutaneous tissue, unsp, L089 - Current - right Buttock
PLAN:
Medication Order Date
New Medication Orders:
Rx#
Generated 06/02/2023 13:06 by Cates, D. PA Bureau of Prisons - CRW Page 1 of 2
Inmate Name: SANTANA-CERANO, MARIBEL Reg #: 99877-479
Date of Birth: 11/26/1976 Sex: F
Provider: Cates, D. PA
Race: WHITE Facility: CRW
Encounter Date: 06/02/2023 11:52 Unit: H02
Medication Order Date
New Medication Orders:
Rx#

*[Handwritten note:] this day he dint check my wound only send me for antibiotics 3 hours later he call me back and said he was sorry he din't check me first.*

**U.S. DEPARTMENT OF JUSTICE**                    **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Santana Maribel          99877479      NCC        FMC Carswell
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A- INMATE REQUEST** Compassionate release/RIS due to debilitated medical conditions in which I will not recover, and the BOP medical staff is unable to treat me. My attorney sent my First CR but your staff denied it in 2 days which tells us my medical records weren't even reviewed. The infection and open wound on my right buttocks has grown and will not get better here per Pt Timons/Assistant notes in system. The BOP doctors said I will now have permanent damage due to your medical neglect in getting my infection treated quickly. My attorney and doctor on the outside said my leg will need to be amputated if the fluid keeps building up this way. I've been in NCC 9 months only getting worse. It is my amendment right to just medical and you are unable to do that so my RIS should be granted. I'm non violent, minimum, first offender, own my own home.

3-27-93
DATE                                          SIGNATURE OF REQUESTER

**Part B- RESPONSE**

DATE                                          WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                    CASE NUMBER: _____

                                                  CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

U.S. Department of Justice

Federal Bureau of Prisons

Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __Santona Cerano Maribel__    __00877-479__    __Ncc 1__    __Carswell__
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

## Part A - REASON FOR APPEAL

I am appeling to the dession that has Been made on my Case. I feel that a proper investagaction has not Been Done. for the mistakes that were made on my arrival on may 18, 2022. I have all the records to prove that I did not get the proper medical treatment upon my arrival witch caused permanent Damage on my Body.

_____        _____
DATE                              SIGNATURE OF REQUESTER

## Part B - RESPONSE

_____        _____
DATE                              REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                CASE NUMBER: _____

## Part C - RECEIPT

CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        _____
DATE                              SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN                                                              BP-230(13)
                                                                     JUNE 2002

3. Usted tiene el derecho de dirigir cualquier inquietud con respecto a su atención médica a cualquier miembro del personal de la institución, incluido el médico, el Administrador de Servicios de Salud, los miembros de su Equipo de Unidad, el Alcaide Asociado y el Alcaide.

4. Tiene derecho a proporcionar a la Oficina de Prisiones directivas anticipadas o un testamento vital que proporcionaría instrucciones a la Oficina de Prisiones si es admitido como paciente hospitalizado en un hospital.

### Sus derechos de atención médica continuaron:

5. Tiene derecho a que se le proporcione información sobre su diagnóstico, tratamiento y pronóstico. Esto incluye el derecho a ser informado de los resultados de la atención médica que difieren significativamente del resultado anticipado.

6. Usted tiene derecho a obtener copias de ciertas partes liberables de su registro de salud.

7. Usted tiene derecho a ser examinado en la intimidad.

8. Tiene derecho a participar en programas de promoción de la salud y prevención de enfermedades, incluidos los que brindan educación sobre enfermedades infecciosas.

9. Tiene derecho a informar las quejas de dolor a su proveedor de atención médica, hacer que su dolor sea evaluado y manejado de manera oportuna y médicamente aceptable, recibir información sobre el dolor y el manejo del dolor, así como información sobre las limitaciones y los efectos secundarios de los tratamientos para el dolor.

10. Usted tiene derecho a recibir los medicamentos y tratamientos recetados de manera oportuna, de acuerdo con las recomendaciones del proveedor de atención médica que prescribe.

11. Usted tiene derecho a que se le proporcionen alimentos saludables y nutritivos. Usted tiene derecho a recibir

3. Usted tiene la responsabilidad de abordar sus inquietudes en el formato aceptado, como el formulario *de Solicitud de Recluso al Miembro del Personal* , la línea principal o los *Procedimientos de Recurso Administrativo aceptados.*

4. Usted tiene la responsabilidad de proporcionar a la Oficina de Prisiones información precisa para completar este acuerdo.

### Sus responsabilidades de atención médica continuaron:

5. Usted tiene la responsabilidad de mantener esta información confidencial.

6. Usted tiene la responsabilidad de estar familiarizado con la política actual y cumplir con ella para obtener estos registros.

7. Usted tiene la responsabilidad de cumplir con los procedimientos de seguridad en caso de que se requiera seguridad durante su examen.

8. Usted tiene la responsabilidad de mantener su salud y no ponerse en peligro a sí mismo, o a otros, al participar en actividades que podrían resultar en la propagación o contracción de una enfermedad infecciosa.

9. Usted tiene la responsabilidad de comunicarse honestamente con su proveedor de atención médica con respecto a su dolor y sus preocupaciones sobre su dolor. También tiene la responsabilidad de cumplir con el plan de tratamiento prescrito y las restricciones médicas. Es su responsabilidad mantener a su proveedor informado de los cambios positivos y negativos en su condición para asegurar un seguimiento oportuno.

10. Usted tiene la responsabilidad de ser honesto con su(s) proveedor(es) de atención médica, de cumplir con los tratamientos prescritos y seguir las órdenes de prescripción. También tiene la responsabilidad de no proporcionar a ninguna otra persona su medicamento u otro artículo recetado.

11. Usted tiene la responsabilidad de comer sano y no abusar o desperdiciar alimentos o bebidas.

2/71

instrucciones sobre una dieta saludable.

12. Tiene derecho a solicitar un examen físico de rutina, según lo definido por la Política de la Oficina de Prisiones. (Si usted es menor de 50 años, una vez cada dos años; si es mayor de 50 años, una vez al año y dentro de un año de su liberación).

12. Usted tiene la responsabilidad de notificar al personal médico que desea someterse a un examen.

13. Usted tiene derecho a la atención dental según se define en la Política de la Oficina de Prisiones para incluir servicios preventivos, atención de emergencia y atención de rutina.

13. Usted tiene la responsabilidad de mantener su higiene y salud bucal.

14. Tiene derecho a un medio ambiente seguro, limpio y saludable, incluidas las áreas de vida libres de humo.

14. Usted tiene la responsabilidad de mantener la limpieza de las áreas personales y comunes y la seguridad en consideración a los demás. Usted tiene la responsabilidad de seguir las regulaciones de fumar.

## SEGURIDAD

Se hará todo lo posible para proporcionar un entorno seguro para cada recluso y para proporcionar el equipo de seguridad adecuado. Los reclusos deben familiarizarse con las normas de seguridad de las instituciones.
La siguiente es una lista de normas de seguridad con las que cada recluso debe estar familiarizado:

1. Es responsabilidad de cada trabajador interno utilizar el equipo de seguridad emitido para protegerla contra lesiones físicas y / o riesgos para la salud. Asegúrese de usar todo el equipo de protección personal requerido, como gafas, zapatos de seguridad, delantales, protectores de brazos, cascos y respiradores antes de comenzar una operación.
2. Debe usar equipo de seguridad al realizar cualquier molienda, cincelado, limado o astillado.
3. La protección auditiva debe usarse en todas las estaciones de trabajo designadas como áreas de alto nivel de ruido.
4. Informe todos los peligros de seguridad inmediatamente a su supervisor de trabajo. No continúe trabajando en ninguna área ni en ninguna maquinaria o equipo que no sea seguro o esté mal protegido. Si su supervisor de trabajo no está de acuerdo en que exista una condición insegura, el hecho debe ser informado al Gerente de Seguridad de la institución.
5. Los reclusos solo realizarán el trabajo que se les asigne. Operar máquinas o equipos, o realizar cualquier operación que no haya sido asignada específicamente, está estrictamente prohibido y dará lugar a medidas disciplinarias.
6. La fabricación o reparación de artículos personales en equipos gubernamentales (excepto cuando esté autorizado en Hobby Shop) va en contra de las normas de seguridad.
7. No intente ajustar, engrasar, limpiar, reparar o realizar ningún mantenimiento en ninguna máquina mientras está en movimiento. Detenga primero la máquina y use dispositivos de bloqueo siempre que sea posible.
8. Los reclusos que se lesionen mientras realizan sus tareas asignadas se reportarán inmediatamente a su supervisor de trabajo. No reportar una lesión laboral a su supervisor, dentro de un máximo de 48 horas, puede descalificarlo para la elegibilidad para el tiempo perdido, los salarios o la compensación.
9. Es responsabilidad de cada trabajador interno ejercer cuidado, cooperación y sentido común en la realización de su trabajo asignado. El juego de caballos en el trabajo no será tolerado en ningún momento.
10. Cualquier recluso que sufra una lesión laboral y aún conserve algún grado de discapacidad en el momento de la liberación, debe comunicarse con el Gerente de Seguridad no menos de 45 días antes de la liberación o transferencia a un RRC con el fin de presentar un reclamo de compensación. Este reclamo debe incluir una evaluación médica antes de que se pueda considerar cualquier compensación.
11. Cualquier tipo de auriculares de radio en el trabajo está estrictamente prohibido.

Prevención y control de incendios La prevención y seguridad de incendios son responsabilidad de todos. Los reclusos deben reportar los incendios al miembro del personal más cercano para que la propiedad y las vidas puedan ser protegidas. No se tolerarán pilas de basura o trapos en áreas cerradas, material combustible, artículos que cuelgan de accesorios o recipientes eléctricos, u otros peligros. Las inspecciones regulares de incendios son realizadas por profesionales

22

protección o el buen orden de la institución.

El personal considerará como contrabando molesto cualquier artículo que no sea contrabando duro, que nunca haya sido autorizado, o que previamente haya sido autorizado para la posesión por un recluso, pero cuya posesión esté prohibida cuando presente una amenaza para la seguridad o su condición o cantidades excesivas de él presenten un peligro para la salud, el incendio o la limpieza. Ejemplos de contrabando molesto incluyen: bienes personales ya no permitidos para la admisión a la institución o permitidos para la venta en la Comisaría; alteración de los bienes personales; acumulación excesiva de Comisaría, periódicos, cartas o revistas que no pueden almacenarse de manera ordenada y segura en el área designada; los alimentos que se echan a perder o se retienen más allá del punto de consumo seguro; artículos emitidos por el gobierno que han sido alterados, u otros artículos hechos de propiedad del gobierno sin autorización del personal.

El personal incautará cualquier artículo en la institución que haya sido identificado como contrabando, ya sea que el artículo se encuentre en posesión física de un recluso, en las viviendas de un recluso o en las áreas comunes de la institución. Un recluso no puede comprar, dar o recibir ninguna propiedad personal de otro recluso. El personal deberá devolver a la autoridad emisora de la institución cualquier artículo de propiedad del gobierno incautado como contrabando. Los bienes muebles confiscados por el personal como contrabando deben inventariarse y almacenarse en espera de la identificación del verdadero propietario (si se trata) y de las posibles medidas disciplinarias. El personal le proporcionará una copia del inventario tan pronto como sea posible.

**Shakedowns** La colocación de dispositivos de detección de metales en todas las instituciones puede ser necesaria para el control del contrabando. Se puede realizar una búsqueda con detector de metales además de la búsqueda de pat. El personal puede llevar a cabo un registro de un recluso de forma rutinaria o aleatoria para controlar el contrabando. El personal también puede realizar una búsqueda visual cuando exista una creencia razonable de que el contrabando puede estar oculto en su persona o se ha producido una buena oportunidad para ocultarlo. Finalmente, el personal puede registrar la vivienda y el área de trabajo de un recluso, y los artículos personales contenidos dentro de esas áreas, sin previo aviso, al azar y sin la presencia del recluso. La propiedad y la sala de estar se dejarán lo más cerca de las mismas condiciones que se encontraron.

**Las instalaciones de Vigilancia de Drogas / Detección de Alcohol BOP** operan programas de vigilancia de drogas y detección de alcohol que incluyen pruebas aleatorias obligatorias, así como pruebas de ciertas otras categorías de reclusos. Una prueba positiva, o la negativa a presentar una prueba, resultará en un informe de incidente.

## OFICINA FEDERAL DE PRISIONES

## DERECHOS Y RESPONSABILIDADES DE LA ATENCIÓN DE LA SALUD

Mientras esté bajo la custodia de la Oficina Federal de Prisiones, tiene derecho a recibir atención médica de una manera que reconozca sus derechos humanos básicos, y también acepta la responsabilidad de cooperar con sus planes de atención médica y respetar los derechos humanos básicos de sus proveedores de atención médica.

**Sus derechos de atención médica:**

1. Tiene derecho a acceder a los servicios de atención médica según los procedimientos locales de su institución. Los servicios de salud incluyen servicios médicos, dentales y todos los servicios de apoyo. Los servicios de salud no pueden ser negados debido a la falta (verificada) de fondos personales para pagar su atención.

2. Usted tiene derecho a conocer el nombre y el estado profesional de sus proveedores de atención médica y a ser tratado con respeto, consideración y dignidad.

**Sus responsabilidades de atención médica:**

1. Usted tiene la responsabilidad de cumplir con las políticas de atención médica de su institución y seguir los planes de tratamiento recomendados establecidos para usted por los proveedores de atención médica. Usted tiene la responsabilidad de pagar una tarifa identificada por cualquier encuentro de atención médica iniciado por usted mismo, excluyendo la atención de emergencia. También pagará la tarifa por el cuidado de cualquier otro recluso a quien intencionalmente inflija daños corporales o lesiones.

2. Usted tiene la responsabilidad de tratar a estos proveedores como profesionales y seguir sus instrucciones para mantener y mejorar su salud en general.

20

## SERVICIOS CORRECCIONALES

Los reclusos pueden poseer solo los bienes autorizados en el Suplemento de la Institución sobre Bienes Personales del Recluso. Solo los artículos enumerados en la Declaración del Programa 5580.06, Propiedad Personal del Recluso, podrán ser transferidos o permitidos desde la transferencia. Los artículos que no figuran en esta Declaración del Programa se enviarán por correo a una dirección que no sea un centro de la Oficina de Prisiones. Muchos de los artículos en el Suplemento de la Institución de Propiedad Personal son solo para USO LOCAL. Esto significa que algunos de los artículos vendidos en la Comisaría de FMC Carswell están permitidos solo en esta institución, y NO pueden ser transferidos a otra institución federal. Todos los bienes personales deben almacenarse en el casillero del recluso u otras áreas autorizadas. Todos los artículos de propiedad personal deben comprarse en la Comisaría a menos que se indique lo contrario.

**Artículos dla Comisaría:** Un recluso no puede poseer artículos dla Comisaría en una cantidad que ocupe más del 25% del total del casillero.

**Revistas, periódicos y libros:** Solo las revistas y periódicos autorizados por el Suplemento de la Institución pueden conservarse en posesión de un recluso. Las revistas pueden conservarse durante tres meses a partir de la fecha de emisión. Los periódicos pueden conservarse durante siete días a partir de la fecha de emisión. Los reclusos están limitados a un total de 10 libros de propiedad personal, incluidos los libros religiosos. Los estudiantes podrán mantener libros directamente relacionados con sus cursos educativos / de formación profesional actuales hasta la finalización de cada curso.

**Materiales legales:** A un recluso se le permite tener material legal relacionado con litigios actuales y en curso y / o acciones legales en su caso. Todo el material legal debe almacenarse dentro de su casillero personal o casillero legal aprobado.

**Radios:** Un recluso puede poseer solo una radio tipo Walkman con un valor declarado de no más de $100. Las radios deben comprarse en la Comisaría y solo se pueden usar y / o usar durante horas NO LABORABLES debido a preocupaciones de seguridad.

**Relojes:** Los reclusos pueden poseer solo un reloj con un valor declarado de no más de $ 100. Los relojes deben comprarse en la Comisaria.

**Fotografías, marcos de fotos, álbumes de fotos y cartas personales:** Cada recluso puede tener un álbum de fotos que contenga no más de 25 fotografías de acuerdo con el Suplemento de la Institución. Todas las fotografías serán de tamaño de instantánea o incluirán no más de una fotografía de tamaño 8" x 10". Las fotografías se pueden colocar dentro de las puertas del casillero de un recluso. Las cartas personales se restringirán a una cantidad (no más de 25) que pueda estar contenida en una caja de zapatos de tamaño estándar.

**Joyería:** Una alianza de boda simple sin piedras puede ser retenida en el momento del compromiso o transferencia. El valor de la alianza de bodas no excederá los $100. Se permiten pendientes aprobados sin piedras. Los pendientes de aro no pueden ser más grandes que una moneda de un cuarto de tamaño. Solo se puede usar un par de aretes a la vez, y solo se puede usar en los lóbulos de las orejas. Se permite un medallón religioso y una cadena que no excedan los $ 100. No se permiten otras joyas.

**Monedas/Sellos:** A ningún recluso se le permite poseer monedas o papel moneda. Un recluso puede poseer un máximo de hasta tres libros de sellos postales (al precio actual).

**\*\*Para obtener una lista completa de los bienes personales permitidos, consulte el Suplemento de la Institución 5580.06, Propiedad Personal del Recluso\*\***

Los artículos de contrabando poseídos por un recluso normalmente no se consideran contrabando si el recluso fue autorizado a retener el artículo al ingresar a la institución, el artículo fue emitido por personal autorizado, comprado por el recluso al Comisaría, comprado o recibido a través de canales aprobados (para incluir aprobado para su recepción por un miembro del personal autorizado o autorizado por las pautas de la institución). Esto garantiza un entorno seguro para el personal y los reclusos al reducir los riesgos de incendio, los riesgos de seguridad y los problemas de saneamiento relacionados con la propiedad personal de los reclusos. El contrabando incluye material prohibido por ley, o por regulación, o material que se puede esperar razonablemente que cause lesiones físicas o afecte negativamente la seguridad, la

*19*

TRULINCS 99877479 - SANTANA-CERANO, MARIBEL - Unit: CRW-F-A

---------------------------------------------------------------------------------------------------------

FROM: 99877479
TO: Health Services Admin
SUBJECT: ***Request to Staff*** SANTANA-CERANO, MARIBEL, Reg# 99877479, CRW-F-A
DATE: 01/22/2023 08:55:34 PM

To: MS GAMEZ
Inmate Work Assignment: A&A

HOLA SENORA GAMES MI NOMBRE ES MARIBEL SDANTANA Y HACE YA 8 MESES ESTOY EN NCC 1 POR UNA
INFECION Q NO FUE TRATADA ADECUADAMENTE YO HABLE CON USTEDE Y ME PROMETIO IR A CIRUGIA PERO NO
PASO ASI Y DEBIDO A ESO SUFRI DANOS IRREPARABLES Y EN ESTE MOMENTO SIGO  CON INFECION ME GUSTARIA
HABLAR CON USTED SOBRE  PARA DEJARLE SABER LO Q PASA LAS ENFERMERAS AQUI NO QUIEREN CAMBIARME
EL DRESSING Y DEEBIDO A ESO MI ERIDA APESTA HORRIBLE ME URGE UNA SOLUCION A ESTO MI ABOGADO ESTA
ASWIENDO TODO LO POSIBLE POR RESOLBER TODO ESTO SI PUEDE DARME UNOS MINUTOS D SU TIEMPO SE LO
AGRADECERIA MUCHAS GRACIAS

no response

No Pierdas to tiempo

LSME-9M9? 833

JPS HEALTH NETWORK
1500 South Main St
FORT WORTH TX 76104

Santana Cerano, Maribel
MRN: 51650058, DOB: 11/26/1976, Sex: F
Adm: 7/1/2022, D/C: 7/5/2022

Not recorded

## ED Provider Notes by Huggins, Charles Andrew, MD at 7/1/2022 8:31 PM

| | | |
|---|---|---|
| Author: Huggins, Charles Andrew, MD | Service: Emergency Medicine | Author Type: Physician |
| Filed: 7/4/2022 4:48 PM | Date of Service: 7/1/2022 8:31 PM | Creation Time: 7/1/2022 8:31 PM |
| Note Type: ED Provider Notes | Status: Signed | |
| Editor: Huggins, Charles Andrew, MD (Physician) | | |

Patient discharged from Sound service with plastic surgery following. Patient has well documented need for continued wound vac treatment for gluteal wound, secondary to gluteal implant complication. She was dc'd with wet to dry dressing and documented that the prison would be able to manage her wound with a wound vac. The receiving physician there now states they don't have the capability to manage such a wound and no wound vac equipment.

## History

### Chief Complaint

| Complaint | Comment | Last Edited By | Time | Relationship | ED Provider |
|---|---|---|---|---|---|
| **Wound Check** | Sent in from the jail to have a wound vac placed to her rectum | Harney, Shelby, RN | 7/1/2022 8:08 PM | None | No |

HPI
History reviewed. No pertinent past medical history. The history section was last reviewed by Harney, Shelby, RN on Jul 1, 2022.

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • FOREIGN BODY REMOVAL | Right | 6/29/2022 |

*Procedure: Removal of buttock implant; Surgeon: Mapula, Steven Edward, MD; Location: JPS MAIN OR;*

| | | |
|---|---|---|
| • TRUNK DEBRIDEMENT | Right | 6/29/2022 |

*Procedure: Negative pressure wound therapy, buttock, using durable medical equipment (DME), total wound(s) surface area less than or equal to 50 sq cm; Surgeon: Mapula, Steven Edward, MD; Location: JPS MAIN OR;*

• TUBAL LIGATION

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Diabetes | Mother | |
| • Diabetes | Father | |

Social History

AVS

- AVS Signature Page (Printed 6/3/2022)
- ED After Visit Summary 2017 (Printed 6/3/2022)

Follow-Ups

- Follow up with Mapula, Steven Edward, MD (Surgery) on 6/6/2022; Follow-up for bilateral buttock implant infection
- Go to JPS HEALTH CONNECT CLINIC (Family Medicine) in 1 week (6/10/2022); Go to clinic to establish Primary Care. This is a walk-in clinic open Monday through Friday. Hours are 8am to 5pm. Go early in the morning.
- Go to JPS EMERGENCY (Emergency Medicine); As needed, If symptoms worsen
- Go to Mapula, Steven Edward, MD (Surgery), on monday for follow up

## Care Timeline

1439 ○ Arrived
1750 ○ Basic Metabolic Panel (BMP) ⓘ
     ○ HCG, Quantitative Plasma
     ○ C-reactive Protein ⓘ
     ○ CBC with Differential ⓘ
     ○ CBC with auto differential ⓘ
1806 ○ acetaminophen 1000 mg
1834 ○ CT abdomen/pelvis wo contrast
2029 ○ Discharged

Santana Cerano, Maribel (MRN 51650058) Printed by Cizek, Kara [7646] at 6/6/2022 8:02 AM

Inmate Name:   SANTANA-CERANO, MARIBEL                                          Reg #:      99877-479
Date of Birth:   11/26/1976                          Sex:    F    Race:   WHITE          Facility:   CRW
Encounter Date: 12/23/2022 09:40                Provider:  Miller, Jason DO       Unit:       F03

| Date | Time | Value(%) | Air | Provider |
|------|------|----------|-----|----------|
| 12/23/2022 | 06:03 CRW | 99 | Room Air | Grimard, Janet RN |

## ROS Comments

ROS positive for consiptation, buttock pain.  Negative for fever, chills, chest pain, shortness of breath, nausea, vomiting

## ASSESSMENT:

Complication of surgical and medical care, unspecified, T889XXS - Current

Constipation, unspecified, K5900 - Current

Pain, unspecified, R52 - Current

## PLAN:

**New Medication Orders:**

| Rx# | Medication | Order Date |
|-----|------------|------------|
|  | Bisacodyl E.C. Tablet | 12/23/2022 09:40 |

    **Prescriber Order:**     5mg Orally   daily x 10 day(s)

    Indication:   Constipation, unspecified

## Disposition:

Follow-up at Sick Call as Needed

## Other:

Add Bisacodyl 5mg daily
Finish course of Doxy
Still waiting for pain management consult report

## Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|----------------|--------|---------------|----------|---------|
| 12/23/2022 | Counseling | Compliance - Treatment | Miller, Jason | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:**  No

**Telephone/Verbal Order:**  No

Completed by Miller, Jason DO on 12/23/2022 09:49

Santana Cerano, Maribel (MRN 51650058) Encounter Date: 07/01/2022

# Santana Cerano, Maribel

MRN: 51650058

**Onyeador, Juliet, RN**          Progress Notes  ⚠ 💬          Date of Service: 7/2/2022  5:56 PM
Case Manager                    Addendum                      Creation Time: 7/2/2022  5:56 PM
Case Management

Status: Not Medically Cleared
Payer: UNTHSC-FEMALE
ADD: Kindred LTCH
Barrier(s): Prison unable to manage wound vac after pt was discharge to them
Plan(s): CM called David Prison Liaison-left a vm regarding referral sent to Kindred

1815  David Prison Liaison returned call; prison was missing a black sponge foam for wound drsg. It has been ordered and due to holiday will receive on Tuesday. Anticipate pt to return there on Tuesday and cancel referral to Kindred

J. Onyeador RN, IPCM
x27134

Electronically signed by Onyeador, Juliet, RN at 7/2/2022  5:57 PM
Electronically signed by Onyeador, Juliet, RN at 7/2/2022  6:17 PM

ED to Hosp-Admission (Discharged) on 7/1/2022          *Note shared with patient*

## Care Timeline

07/01 ⚭ Admitted from ED (Observation) 2322
07/05 ⚭ Discharged 1537

Santana Cerano, Maribel (MRN 51650058) Printed by Cizek, Kara [7646] at 7/6/2022 7:41 AM

TRULINCS  99877479 - SANTANA-CERANO, MARIBEL - Unit: CRW-H-N
------------------------------------------------------------------------------------------------

FROM: Crano, Amy
TO: 99877479
SUBJECT: Mira el meti? est? a la regional
DATE: 06/26/2023 04:06:05 PM

60 Your C l i e n t - Maribel Santana Cerano Registration Number - 99877-479
Mr. Kallinen:
This acknowledges our receipt of your claim, dated November 3, 2022, filed on behalf of your client, Maribel Santana Cerano
pursuant to the Federal Tort Claims A.tc The Federal Bureau of Prisons deemed your claim received for processing on
December ,1 2022
Claims processed pursuant to the Federal Tort Claims Act
normally receive a response within six months. Accordingly, uoy may expect a response from this office on or before June ,1
2023.
In order for us to continue communicating with you regarding this claim, please supply su with a copy o f your authority ot
represent signed by Ms. Santana Cerano.
Please note it is your responsibility ot keep us updated with your correct current address.
Sincerely,
For
OohnaBurrows Jason Sickler Regional Counsel
JAS/jdb
U.S. Department of Justice Federal Bureau of Prisons South Central Regional Office
U.S. Armed Forces Reserve Complex 344 Marine Forces Drive
Grand Prairie, XT

TRULINCS 99877479 - SANTANA-CERANO, MARIBEL - Unit: CRW-H-N

-------------------------------------------------------------------------------------------

FROM: Crano, Amy
TO: 99877479
SUBJECT: Lawyer
DATE: 06/06/2023 09:06:04 PM

Dear Ms. Cerano,

The medical care professional I engaged reviewed the medical records and had the comments below. This took longer than expected but I am putting this into the motion for compassionate release and will be filing soon. Thank you!

Sincerely,

Randall L. Kallinen
KALLINEN LAW PLLC
511 Broadway Street
Houston, Texas 77012
Telephone: 713/320-3785
FAX: 713/893-6737
Email: attorneykallinen@aol.com

WARNING: Confidential; Attorney/Client Privilege
This e-mail message is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. Unauthorized review, use, disclosure or distribution is strictly prohibited. This e-mail concerns legal matters and contains information protected by attorney/client privilege, attorney work product privilege, and investigation privilege as well as other possible privileges and none of these privileges are waived. Dissemination, forwarding, discussing, or sharing of this e-mail or its content is forbidden.

5/19/2022 Ms.. Cerano was seen by the FNP-C who ordered wound care 3x's a week for 90 days to the right gluteal area. This was an initial assessment on transfer to the facility.
5/20/2022 Physical therapy documented wound care services were not indicated due to the inability of the gluteal wound to heal without surgical closure and there was a visible implant in the right gluteal area. The patient was discharged from physical therapy wound care.
6/3/2022 Ms. Cerano is taken to the ER for her wound and discharged.
6/14/2022 Surgery is scheduled for wound closure and implant removal on 6/21/2022. The wound is worsening. The patient was brought to the ER for a wound check. The physician documents "They do not recommend additional admission at this time. They are scheduling her for outpatient surgery sometime next week."
6/19/2022 It is noted by the RN the patient is not on the med trip list for 6/21/2022 (Ms. Cerano's scheduled surgery date).
6/21/2022 Patient missed scheduled surgery because it wasn't communicated to Carswell's staff. Noted an attempt to reschedule ASAP, but never a documented reschedule date.
6/27/2022 Patient taken back to ER where Dr. Sweeney documents, " patient has right buttock implant that was placed 3 years ago. It has healed but she got a wound on her bottom one month ago and it started to get larger. She has been here twice this month for pain associated with this. Prison did not take her to her surgery follow-up appointment. CT scans both times she was here this month. I do not feel comfortable discharging this patient and she will be admitted."
6/29/2022 Patient has surgery on right buttock with implant removed and Wound VAC placed.
7/01/2022 Patient discharged with the need for Wound VAC at the prison. The prison states the equipment is there and the patient is transported with just a dressing and an order for the Wound VAC to be placed within 2 hours (this is a negative pressure dressing) of arrival. On arrival, the prison does not have the equipment, and the patient is sent back to the hospital.
12-29-2022 The wound is still not healing. Jason Miller DO documents "There are still signs of infection in the wound, despite being on antibiotics. The wound is deeper and tunneling slightly." "She has been on 5 different antibiotics without full resolution of the infection and wound."
It appears that Ms. Cerano waited approximately 41 days while incarcerated with an open wound with an implant showing before she was allowed surgery to correct it. She was given antibiotics and a dressing in the interim. The facility was aware that she needed a surgical consult from the wound care expert's (physical therapy) documented initial evaluation. Ms. Cerna was forced to miss her June 21, 2022, surgery because of miscommunication within the facility. She finally received surgery on 6/29/2022, after the ER physician was uncomfortable discharging her because the wound had become so severe. This type of delay in care would likely not occur with an ordinary patient. An open wound with a visible implant and infection is considered urgent if not emergent. The patient was still suffering from an unhealed wound 6 months after her surgery and now suffers from nerve pain. She has been given many antibiotics as well.

TRULINCS 99877479 - SANTANA-CERANO, MARIBEL - Unit: CRW-H-N

---

FROM: Hernandez, Rebeca
TO: 99877479
SUBJECT: Medical Records 08/01/2023
DATE: 04/04/2024 04:06:09 AM

Bureau of Prisons
Health Services
Clinical Encounter
Inmate Name: SANTANA-CERANO, MARIBEL Reg #: 99877-479
Date of Birth: 11/26/1976 Sex: F
Provider: Bollinger, Timothy (MAT)
Race: WHITE Facility: CRW
Encounter Date: 08/01/2023 09:15 Unit: H02
Chronic Care - Chronic Care Clinic encounter performed at Health Services.
SUBJECTIVE:
Chief Complaint: Chronic Care Clinic
Pt presents to clinic for chronic care visit. states still has open wound on her buttock and she
is having to change her dressings in the bathroom. She has been frustrated with her care that
she was released from inpatient unit before wound has closed.
Subjective:
Pain:
COMPLAINT 1 Provider: Bollinger, Timothy (MAT) DO
Yes
Pain Assessment
Date: 08/01/2023 11:39
Location: Buttock
Quality of Pain: Burning
Pain Scale: 7
Intervention: none
Trauma Date/Year:
Injury:
Mechanism:
Onset: 1-5 Years
Duration: 1-5 Years
Exacerbating Factors: activity
Relieving Factors: none
Reason Not Done:
Comments:
Seen for clinic(s): General
OBJECTIVE:
Temperature:
Date Time Fahrenheit Celsius Location Provider
08/01/2023 08:33 CRW 97.6 36.4 Forehead Duron, Brenda CMA
Pulse:
Date Time Rate Per Minute Location Rhythm Provider
08/01/2023 08:33 CRW 67 Via Machine Duron, Brenda CMA
Respirations:
Date Time Rate Per Minute Provider
08/01/2023 08:33 CRW 18 Duron, Brenda CMA
Blood Pressure:
Date Time Value Location Position Cuff Size Provider
08/01/2023 08:33 CRW 127/87 Left Arm Sitting Duron, Brenda CMA
Generated 08/01/2023 11:56 by Bollinger, Timothy (MAT) DO Bureau of Prisons - CRW Page 1 of 3
Inmate Name: SANTANA-CERANO, MARIBEL Reg #: 99877-479
Date of Birth: 11/26/1976 Sex: F
Provider: Bollinger, Timothy (MAT)
Race: WHITE Facility: CRW
Encounter Date: 08/01/2023 09:15 Unit: H02
Date Time Value Location Position Cuff Size Provider

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | |
|---|---|---|
| Inmate Name: | SANTANA-CERANO, MARIBEL | |
| Date of Birth: | 11/26/1976 | Reg #: 99877-479 |
| Note Date: | 06/30/2022 11:42 | Sex: F   Race: WHITE   Facility: CRW |
| | | Provider: Perez, Monica RN   Unit: H02 |

Admin Note - Community Hospital Report encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE   1          Provider:  Perez, Monica RN

06/30/22 - T 97.7, HR 65, RR 17, BP 124/61, SpO2 99% on R/A. No new labs, pathology specimen collected in process.

Surgery plan:
S/P removal of ruptured breast implant, including implant contents. Right gluteal implant that was removed by Dr. Mapula listed with ID# CCB5-2.
Findings:  Large formed stable smooth round silicone implant removed from the right buttock.  No serial number or manufacture ID noted on the implant.  Mucinous biofilm removed from the right buttock and sent for culture.  Large complex wound of the right buttock not amenable to primary closure.  Wound VAC placed. Plan for discharge back to her facility once the wound VAC is arranged.  Await cultures

Medicine plan:
Denies any fever, chills.  S/P surgery yesterday.

# Infected right gluteal silicone implant with wound dehiscence:
Continue empiric antibiotics
Has bilateral silicone implants in the gluteal region.  Worsening skin erosion, wound on the right gluteal implant, started several months ago, progressively worsening
Pain control
Plastic surgery on board.  T

# history of depression, anxiety disorder:
Continue Zoloft

Dispo -anticipated discharge pending surgical recommendations

**Copay Required:** No                    **Cosign Required:**  Yes
**Telephone/Verbal Order:**  No
Completed by Perez, Monica RN on 06/30/2022 11:45
Requested to be cosigned by  Bollinger, Timothy (MAT) DO.
Cosign documentation will be displayed on the following page.



JPS HEALTH NETWORK
1500 South Main St
FORT WORTH TX 76104

Santana Cerano, Maribel
MRN: 51650058, DOB: 11/26/1976, Sex: F
Adm: 6/14/2022, D/C: 6/14/2022

---

**H&P by Baginski, Bryana, MD at 6/14/2022  5:10 PM (continued)**

Resp: NLB on room air.

Abdomen: soft, nt, nd.

Buttock: **Approximately 7 cm area of skin breakdown with exposed implant as seen in image below with a separate inferiormedial 1 cm area of skin breakdown**

Musc: FROM

Extremities: Palpable radial 2+ bilaterally, palpable dp and pt 2+ bilaterally, no edema.

Neuro: motor and sensory function intact. CN II-XII intact





**Lab Results**
**All Lab Results Last 24 Hrs**



JPS HEALTH NETWORK
1500 South Main St
FORT WORTH TX 76104

Santana Cerano, Maribel
MRN: 51650058, DOB: 11/26/1976, Sex: F
Adm: 6/27/2022, D/C: 7/1/2022



Scan on 6/14/2022  4:56 PM by Baginski, Bryana, MD (below)

JPS HEALTH NETWORK
1500 South Main St
FORT WORTH TX 76104

Page 75

Santana Cerano, Maribel
MRN: 51650058, DOB: 11/26/1976, Sex: F
Adm: 6/3/2022, D/C: 6/3/2022
Printed by Thomas, Judy M at 9/12/22  3:08 PM

Santana Cerano, Maribel (MRN 51650058) Encounter Date: 06/27/2022

MEDICAL RATIONALE FOR TREATMENT:
Treatment is necessary to preserve skin integrity, reduce pain, restore function, and improve quality of life.
Treatment will continue until the problem is resolved.

- Patient has chronic non-healing wound to right buttock secondary to infection from silicone implant.
- Dr. Mapula called. Patient will need to have it surgically removed. Will send patient to ED for high level of care
- Continue local wound care
  - Cleansing of wounds: Avoid the use of topical cytotoxic or potentially sensitizing agents, no hydrogen peroxide
  - Moist wound healing agents to promote autolytic debridement, reduce wound bioburden, improve granulation tissue formation and enhance re-epithelialization of the wound surface.
  - **Dressing applied today: bacitracin and abd pad**
- Recommend offloading, turning and protection.
- Nutrition assessment and support with adequate protein intake, vitamin C, MVI, and general blood sugar control discussed in order to optimize nutritional status to maximize wound healing
- Pain, edema, and drainage control prn
- Continue all other medications and therapeutic interventions as previously prescribed by your primary attending and/or consulting physicians unless otherwise specified.

Discussed:
  - Wound etiology and physiology discussed
  - Questions solicited and answered
  - Counseled regarding wounds, treatment plan, prognosis, need for further care and adherence with treatment recommendations.
- Patient specific treatment options discussed and treatment plan agreed upon.
- ED precautions given including but not limited to: worsening pain, erythema, tenderness, drainage, purulence, foul odor, discharge, fluctuance, fever, chills, rapidly expanding cellulitis/rash.

RTC after discharge

Hei Nam Cheryl Wong, FNP-C
06/27/22 10:40 AM

Clinic Number: 817-702-4268

**This note was generated using the M Modal Fluency voice recognition software. Please notify me of any mistakes in the dictation that I may have overlooked in my editing.**

Electronically signed by Wong, Hei Nam, APRN, FNP at 6/27/2022 11:33 AM

Office Visit on 6/27/2022    *Note shared with patient*

## Additional Documentation

Vitals:        BP 139/87 (BP Site: Left arm, BP Position: Sitting, BP Cuff Size: Medium Automated) Pulse 69;
               Temp 98.5 °F (36.9 °C) (Oral) Resp 18 Ht 5' 3" (1.6 m) Wt 153 lb (69.4 kg) SpO2 99% BMI 27.10 kg/m²
               BSA 1.73 m² Pain Sc  9

Flowsheets:    Infectious Disease Screening, TB Screening, Ambulatory Screening, PHQ9 Questionnaire, Pain Assessment,
               SIRS, Shock Index, Vital Signs Complex, E/M Criteria Worksheet

Encounter Info: Billing Info, History, Allergies, Detailed Report

## Orders Placed

None

# Bureau of Prisons
## Health Services
## Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: | SANTANA-CERANO, MARIBEL | | Reg #: 99877-479 |
| Date of Birth: | 11/26/1976 | Sex: F  Race: WHITE | Facility: CRW |
| Encounter Date: | 07/05/2022 17:22 | Provider: Smith, Hayden Contract | Unit: F03 |

Physician - Evaluation encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT 1        Provider:  Smith, Hayden Contract MD

Chief Complaint:   Medical Trip Return

Subjective:   Inmate presents after medical trip return. Inmate was initially hospitalized 6/27-7/1 for infected R gluteal silicone implant requiring removal and wound vac placement. She was treated with empiric abx and underwent I&D with removal of R gluteal implant and removal of the biolfilm and application of wound VAC on 6/29. Initially discharged 7/1 but was readmitted to hospital as CRW did not have materials to apply/maintain her wound vac. Per discharge paperwork, vac was re-applied by wound care team on 7/4. At that time they noted her wound to measure 8x10x2.6 cm with undermining from 9 to 5 oclock up to 4.6 cm at 10 oclock. At this time she primarily complains of pain around wound site. No other complaints at this time, denies fever, chills, ab pain, N/V/D, weakness. She is mainly concerned about speaking with her family and getting her belongings.

Pain:        Yes

**Pain Assessment**

| | |
|---|---|
| Date: | 07/05/2022 17:31 |
| Location: | Buttock |
| Quality of Pain: | Aching |
| Pain Scale: | 8 |
| Intervention: | acetaminophen prn |
| Trauma Date/Year: | |
| Injury: | |
| Mechanism: | |
| Onset: | 1-2 Weeks |
| Duration: | 1-2 Weeks |
| Exacerbating Factors: | wound care |
| Relieving Factors: | none |
| Reason Not Done: | |
| Comments: | |

**OBJECTIVE:**

Temperature:

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 07/05/2022 | 17:08 CRW | 98.2 | 36.8 | | Yoon, J. RN |

Pulse:

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 07/05/2022 | 17:08 CRW | 75 | | | Yoon, J. RN |

Respirations:

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|

# Santana Cerano, Maribel

MRN: 51650058



| Huggins, Charles Andrew, MD | ED Provider Notes ⚠ 🖤 | Date of Service: 7/1/2022  8:31 PM |
| --- | --- | --- |
| Physician | Signed | Creation Time: 7/1/2022  8:31 PM |
| Emergency Medicine | | |

Signed

Patient discharged from Sound service with plastic surgery following.  Patient has well documented need for continued wound vac treatment for gluteal wound, secondary to gluteal implant complication.  She was dc'd with wet to dry dressing and documented that the prison would be able to manage her wound with a wound vac.  The receiving physician there now states they don't have the capability to manage such a wound and no wound vac equipment.

## History

### Chief Complaint

| Complaint | Comment | Last Edited By | Time | Relationship | ED Provider |
| --- | --- | --- | --- | --- | --- |
| **Wound Check** | Sent in from the jail to have a wound vac placed to her rectum | Harney, Shelby, RN | 7/1/2022 8:08 PM | None | No |

HPI

History reviewed. No pertinent past medical history.  The history section was last reviewed by Harney, Shelby, RN on Jul 1, 2022.

Past Surgical History:

| Procedure | | Laterality | Date |
| --- | --- | --- | --- |
| • FOREIGN BODY REMOVAL | | Right | 6/29/2022 |
| Procedure: Removal of buttock implant;  Surgeon: Mapula, Steven Edward, MD;  Location: JPS MAIN OR; | | | |
| • TRUNK DEBRIDEMENT | | Right | 6/29/2022 |
| Procedure: Negative pressure wound therapy, buttock, using durable medical equipment (DME), total wound(s) surface area less than or equal to 50 sq cm;  Surgeon: Mapula, Steven Edward, MD;  Location: JPS MAIN OR; | | | |
| • TUBAL LIGATION | | | |

Family History

| Problem | Relation | Age of Onset |
| --- | --- | --- |
| • Diabetes | Mother | |
| • Diabetes | Father | |

Social History

Tobacco Use
• Smoking status:          Never Smoker
• Smokeless tobacco:     Never Used
Substance Use Topics
• Drug use:                    Never

I did review past medical history, surgical history, family history, and social history. Huggins, Charles Andrew, MD



JPS HEALTH NETWORK
1500 South Main St
FORT WORTH TX 76104

Santana Cerano, Maribel
MRN: 51650058, DOB: 11/26/1976, Sex: F
Adm: 6/3/2022, D/C: 6/3/2022

H&P by Strothman, Phillip, MD at 6/3/2022  7:06 PM (continued)



JPS HEALTH NETWORK        Santana Cerano, Maribel
1500 South Main St        MRN: 51650058, DOB: 11/26/1976, Sex: F
FORT WORTH TX 76104       Adm: 6/27/2022, D/C: 7/1/2022

Scan on 6/27/2022 10:38 AM by Cochran, Shelly, RN: Rt buttock 22cm c 27cm  (below)



JPS HEALTH NETWORK
1500 South Main St
FORT WORTH TX 76104

Santana Cerano, Maribel
MRN: 51650058, DOB: 11/26/1976, Sex: F
Adm: 6/14/2022, D/C: 6/14/2022

ED Provider Notes by Holmes, Chad Timothy, DO at 6/14/2022  3:00 PM (continued)



Medical Decision Making

 

JPS HEALTH NETWORK
1500 South Main St
FORT WORTH TX 76104

Santana Cerano, Maribel
MRN: 51650058, DOB: 11/26/1976, Sex: F
Adm: 6/27/2022, D/C: 7/1/2022

Scan on 8/1/2022  2:10 PM by Cochran, Shelly, RN: Left buttock 4.5 x 4.5 x 2.4 (below)

JPS HEALTH NETWORK
1500 South Main St
FORT WORTH TX 76104

Santana Cerano, Maribel
MRN: 51650058, DOB: 11/26/1976, Sex: F
Adm: 6/3/2022, D/C: 6/3/2022

Page 83                                              Printed by Thomas, Judy M at 9/12/22  3:08 PM

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

# REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Santana Cerano [illegible] | [illegible] | [illegible] | Carswell
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A- INMATE REQUEST** I am [illegible] ... I consider that [illegible] ... the mistakes that were done [illegible] ... [illegible] ... arrived with a [illegible] ... that I was not [illegible] ... [illegible] ... that they program [illegible] ... I [illegible] lost a big part of my [illegible] ... [illegible] ... done and could [illegible] my [illegible] ... conditions I am [illegible] ... [illegible] ... what happened to me due that in this moment [illegible] ... [illegible] going through a deep depression [illegible] ... [illegible] ... damage [illegible] for ever all of this could ... be prevent [illegible] time

[illegible] DATE [illegible] 2022

SIGNATURE OF REQUESTER

**Part B- RESPONSE**

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**SECOND COPY: RETURN TO INMATE**

CASE NUMBER: 1133311-F1

CASE NUMBER: ____________

**Part C- RECEIPT**

Return to: ____________
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: ____________

DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN

BP-229(13)
APRIL 1982

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

# REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: _____ _____ _____ _____
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

## Part A-- INMATE REQUEST

_____                    _____
DATE                                       SIGNATURE OF REQUESTER

## Part B- RESPONSE

_____                    _____
DATE                                       WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**                    CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                                    CASE NUMBER: _____

## Part C- RECEIPT

Return to: _____ _____ _____ _____
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

_____          ☸          _____
DATE                    PRINTED ON RECYCLED PAPER    RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                                                                 BP–229(13)
                                                                        APRIL 1982

**Requirement for submission of this request directly to the Regional Director, Bureau of Prisons.**

When the inmate believes that he may be adversely affected by submission of this request at the institution level because of the sensitive nature of the complaint, he may address his complaint to the Regional Director. He must clearly indicate a valid reason for not initially bringing his complaint to the attention of the institution staff.

If the inmate does not provide a reason, or if the Regional Director or his designee believes that the reason supplied is not adequate, the inmate will be notified that the complaint has not been accepted. The form sent to the Regional Director will not be returned. However, the inmate may prepare a new request and submit it at the institution if he wishes.



Maribel Santana Cerano
99877479 unit 1 North
Federal Medical Center Carswell
P.O Box 27137
Ft worth tX 76127

RECEIVED

MAY -7 2024

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

CERTIFIED MAIL

7022 1670 0001 7324 8194

⇔99877-479⇔
District Court Clerk
501 W 10TH ST
Room# 310
FORT Worth, TX 76102
United States