U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

JUL 11 2024

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

United States District Court
For The Northern District of
Texas Fortworth Division

Maribel Santana Cesano,
        Plaintiff

            V.                    Case No.:4:24-CV-403-0

Warden Rule, Et Al.,


            Plaintiff's Response To Court's
                    Request


    The Plaintiff MOVES to offer the following brief summary of situations that show how and why she has named persons as defendants with regards to her lawsuit before this Honorable Court. This Plaintiff further requests that this Honorable Court remembers she is a prisoner and a layperson. Also pro se complaint. A handwritten pro se complaint is to be liberally construed. A pro se complaint, however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers.

Ms. Santana Cesano will as artfully as she can present FACTS that have caused the intentional infliction of pain and suffering through sustained deliberate indifference by named persons violating the cruel and unusual punishment clause of the Eighth Amendment by failing to provide adequate medical treatment; self care needs of medical supplies needed by the Plaintiff. This motion does not contain every interaction nor comment or treatment by listed defendant, but some that should grant this Court an understanding of her claims. Additionally, some eye witnesses will have to be reached by investigator and/or lawyers as well as some records.

Some interactions include but not limited to:

Defendant Sancho Polo: Came to SA on May 19th 2022 to make rounds and upon reaching my cell (where I had been wrongly placed with three additional women) I asked Polo... "Why am I being held in sesogration. I'm here due to a infection with an open hole.

Polo replied with such distain and disregard to the simplest fact that Ms. Santana Cerano was and is a human being and stated, "There is nothing I can or will do for you. Just deal with it... or don't I don't care."

In tears Santana Cerano begged for pain relief and materials to clean up all the puss, infection, and blood that was leaking through her uniform pants and she asked for some gauze to cover the opening of the hole on her right buttock.

Polo replied, "Like I said I don't care and do I look like I have anything to give you? Use your toilet paper, I don't know what to tell you... you're in prison deal with it."

May 20th after a night left in serious pain with soaked clothing with infection and blood Ms. Timmons showed up and asked, "Why are you in SA. Houston sent you here for treatment you should be on the fourth floor for medical."

The Plaintiff responded: "Please help me, look at me. I'm covered in blood and God I'm in such pain. Please get me supplies and moved."

Timmons stated, "Well, I'm just here to photograph the hole, I don't know what to tell you about all that."

Santana replied, "Can't you go get me help?"

Timmons responds, "Not my job, remove your pants so I can get this stupid photograph or I can say you refuse and make my day better."

Santana, "Why are you being so cruel? I'm sick and in pain. I need your help please, listen to me. I have a fever, please some ice, clean clothes and something to take the fever and pain down." (crying the whole time)

Timmons, "last chance... drop your pants or I'm gone. You're fine... tears don't bother me I've seen plenty of fakes."

Timmons raised the camera and took the photograph. She made a gagging sound and said, "why is your ass black like that?" (See Photograph #1, circled area hole - buttock is black)
Santana cried out, "I need help."

Timmons walked away, "Gross."
No help was sent.

Santana Cerano was left there for 17 days with no medical help, no medical supplies, no pain or fever medications all while the hole ripped further open. Infection leaking out and taking over her right buttock causing her stomache to swell with infection.

"Deliberate indifference to a prisoner's serious medical needs constituted cruel and unusual punishment under the Eighth Amendment and gave rise to a civil rights cause of action under 42 USCS § 1983, regardless of whether the indifference was manifested by prison doctors in their response to the prisoner's needs or by the prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." See Estelle v. Gamble 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285, reh den 429 US 1066, 50 L. Ed. 2d 785 97 S. Ct. 798, No. 75-929 Opinion by Marshall J., joined by Burger Ch. J., Brennan, J., Stewart, J., White, J., Powell, J., and Rehnquist, J..

6

On 6.3.22 Santana was removed from segregation and placed in housing unit One North and NOT placed in the hospital unit. At this point the Plaintiff was in such pain she could not sleep; could not walk without crying due to the infection and the pants rubbing the open hole causing more bleeding; could sit in any chair; could not maintain self worth or dignity as everyone could see her soaked clothing; still had no medical care, concern, or supplies 19 days of PRIME SUFFERING with total regard to any basic human dignity or needs.

The following day 6.4.22 Santana walks to the clinic very sick, high fever, in pain, leaking all over herself still. The abuse began immentensely

Nurse Kuniksz coldly said to the Plaintiff while the Plaintiff is crying due to the pain and begging for someone, anyone to PLEASE HELP ME .. "Well, shit that's what you get when you put implants in your body so don't cry now." "You were in pain when you had sugery to put them in so deal with this pain."

There was a staff witness to this cruetly and deliberate indifference named Mr. Feliciano he is one that an investigator or attorney on the

Plaintiff's behalf would have to gain access to unless the prison forces his silence. once they read this complaint.

Doctor Shakleford told Santana to "write them up for putting you SA and never coming to see you." That day Doctor Shakleford had Santana taken to the emergency room.

Upon leaving medical nurse Kunitksz got in one additional statement.. "Suck it up you wanted to look good now you're paying!"

Once at the hospital Santana was told "we've set you up for emergency surgery next week"

Santana was brought back to Fmc Carswell where everyday she would painfully walk over to sick call at 6:25 am for help. She was in constant overwhelming pain (SEE Photographs 1-5 to understand how her body was Ripping Apart, Opening, exposing the implant rottening flesh) She ran consent fevers and was placed on low grade antibotics by Carswell and told to take ibprofen from commissary. (SEE Photographs these are NOT ibprofen grade images. The Plaintiff did not have a simple

8

headache or spained ankle. No reasonable juror could say she was not and does not suffer.

Each day Santana was subjected to nurse Kunikez's belittling and humilating comments such as:

"You did this to yourself"
"You got what you deserved"

Now nurse Nolan was joining in the abuse by stating:

"Stop coming over here we aren't going to baby you because you wanted to be hot"
"Come back and we'll send your ass to SA again so you can't keep bothering us"

Santana told Lts. and the Warden who both only smiled and said "Well we're not medical so we can't help you. What do you want while you're in prison? Special treatment for a mistake you made. Medical will deal with you."
This was shocking and final to Santana that it was and is clear, there is no help or care for her here at FMC Carswell. She's a nobody just a worthless inmate that they can put through anything they wish with nowhere for her to turn.

They began laughing at her in mainline as she would approach and she would turn away because she was not going to get help, then found it funny. Inmates did not however and would try to get clean clothes, medical gauze, and even cut up bed sheets to attempt to make bandages to soak up body fluids and try to keep out all the bacteria from the unit from getting into her body. See Estelle, 429 U.S. at 186, See also Wilson v. Campbell, 541 U.S. 637 (2004) ("deliberate indifference to serious medical needs... constitutes the unnessary and waton infliction of pain proscribed by the Eighth Amendment"); Board v. Farnham, 394 F. 3d 469 (7th Cir. 2005) (denial of access to toothbrush violated pretrial detainees' rights to adequate medical treatment where plaintiff had serious dental problems).

If the courts find denial of a toothbrush to someone who has dental problems to violate the Eighth Amendment, deliberate indifference to a serious medical need then the Plaintiff once more asks the Court to view Photographs provided that clearly show the pain and indifference that she suffers. No person could look upon her wounds and say she was and is in serious need, to do so would be the VERY

ACT of acting deliberately indifferent against her.

Defendant Dr. Bollinger promised Santana 16 times to get her to surgery. But each time he would state "I can not help"; "you have to wait"; "you're not an emergency"; "Hospital did not keep you so you're not that bad"; "what do you want from me it's prison health care if you didn't want to go through it you shouldn't have come to prison"; "You get what you pay for."

Santana would reply at different times, "The prison would not allow the hospital to keep me."

Several times the emergency room doctor told Santana "I'm trying to keep you, you need major antibiotics and wound care and surgery but Carswell's telling me no to send you back I'm so sorry!"

(See report where E.R. doctor finally refused by stating he didn't feel good sending her back.)


Doctor Bollinger began telling inmate employees to go out into lobby and tell her to go away or that he was out. The staff made many threats to place her into the situ.

Santana would ask Doctor Bollinger to issue an order for medical care equiment she must have to obtain any self care, self wound care. Doctor Bollinger refused every time.

Nurse Madelin stated "You don't belong up here in medical you just wanted to look good so you don't get my concern."

The Plaintiff was sent away hobbling in pain with no regard to her health or leakage running down her leg.

Nurse Madelin called Santana over to sign the form for surgery and gave the Plaintiff the rules such as 1) No eating or drinking on night before surgery (June ). The next morning at 10 am Santana went to medical because no one came to get her for the surgery she'd signed for. The clinic called nurse Madelin and nurse Madelin told the clinic Santana was a liar and that she never had her sign any forms nor had she seen her. "She's just a lair, typical inmate." (See signed form in lawsuit) Surgery was missed due to Madelin's failure to input information so she attempted to cover up her mistake and abuse Santana.

To this date Mr. Cates openly jokes in regards to Santana's condition. He calls in medication (antibiotics) with total disregard to her, he does this and states "I don't want to see you just go get the med's I called in hope that keeps you off my back."; "Stop complaining all the time."; "Trust me no one and I mean no one is looking at your ass"; "Your ass is discusting" "One side's blown out ha, ha, ha,"

Santana went to Mr. Cates with a request that he signed her out of working in the Kitchen (duty they put her on when she filed the lawsuit). She explained she is in pain and the movements are causing her even more tenderness and draining. She further explained the humilation she suffers when Kitchen works and staff see the "wet spots" all over her pants.
Mr. Cates replied "Work smart not hard and no one's looking at that ass trust me now leave."

To date Santana's still in the Kitchen with open wounds.

July 1st 2022 Santana comes back from hospital with order to be placed on a wound Vac. Dr. Barthett was personally spoken to by hospital Dr. who informed Dr. Barthett that Santana MUST be on the wound Vac within 2 hours of return.

13

to FMC Carswell. Dr. Barthelt reassured the hospital that the "equiment needed "was here and ready to go."

Upon return Dr. Bollinger, nurse Nolan saw Santana and told her "Go to your unit NOW!"
Santana asked about the machine and informed Bollinger and Nolan that the hospital called and confirmed it!
Dr. Barthelt with Nolan told Santana "you're crazy you don't what you're talking about LEAVE!"
When Santana refused, they ordered her to lay down they removed (forcably) the bandages and exposed the HUGE WOUND that was over 90% of her right buttock gone from rot.

Dr. Barthelt said "OH MY GOD!"
Nolan said, "I Don't Know what to do with that."

They forced her to sit on the wounds for hours then to sit on it on the car ride back to the E.R.
E.R. Doctor said upon her return "I have the record of the phone call to Dr. Barthelt that the machine was there and they could tend to your medical needs."
He further said, "I told them you must go to the wound care clinic                but they refused and said they could provide the needed care".
(See his reports) FMC Carswell lied and showed no concern to the truth or medical wishes of outside

14

medical provider.

Once TMC Carswell did place her on the wound vac it did not WORK FOR 2 MONTHS. Outside Dr. removed it and stated, "You'll never heal properly":

To todays date the wounds still leaking and open and staff will not help her.

Ms. Gomez in human services continously made promises to Santana "that she'd get surgery."; "I promise we'll pay for everything"; "I know this is my fault too"; Never happened. Ms. Gomez merely wanted for the Plaintiff to leave her office.

Ms. Harris was a witness to the suffering and the reactions by outside hospital but now since filing suit Harris is aggressive and lies to write Santana up. Harris said at recreation, "Sue us, we'll see!"

Warden Smith was begged for help and Warden Rule refuses to render any assistance.

Courts have found deliberate indifference because of system-wide problems in the provision of medical care to inmates. In these cases, the courts have

15

that palpable problem in medical staffing, facilities, equipment, and/or procedures, together with correctional officials' failure to rectify these problems constitutes deliberate indifference. See, e.g., Bass v. Washington, 769 F.2d 1173 (7th Cir. 1985)(sick call procedures inadequate to ensure prompt access to medical care; medical personnel unqualified to use cardiac life support equipment); Wellman v. Faulkner, 715 F.2d 269 (7th Cir. 1983)(necessary medical supplies not stocked) See also Ramos v. Lamm, 639 F.2d 559 (10th Cir. 1980).

On the basis of this complaint one can see that Santana suffered greatly while her body ripped apart and infection ate her flesh away and caused further circumstances such as major infections of her lower abdomen. Access to quality medical care, nor access to caring employees, nor access to medically needed supplies was and continues to be unfurnished and now with the filing of said lawsuit retaliations have begun by FMC Carswell staff members.

At some point Ms. Santana may request to add joiners onto this lawsuit as the retaliations build.

Plaintiff's allegations should be accepted as true, which is required at this stage of the proceedings, Plaintiff has alleged sufficient facts to state a deliberate indifference on behalf of the defendant.

Covering fraud, medical care, medical supplies, clean clothing and beding, cruelty and humiliations, virbel abuses and complete disregard to Plaintiff's human diginty, and their knowledge that she was and is currently suffering due to their conduct.

Each of these defendants had knowledge of the Plaintiff's condition and joked about it while turning her away cruelly from attempts for help. They showed no regard towards her basic human needs when she openly cried out for their interventions. The mere fact that they very late in the game, after long terms of suffering and decay of peices of her body, that now can never be fully repaired sweep in a new unknown doctor to preform a very difficult surgery that the Plaintiff has never met in person and who never personally reviewed or examined the major wound left as a RESULT OF THE Defendant's deliberate indifference should not hold any regard in the fact she is filing suit for all the pain and suffering she has been subjected to.

The court need only look upon the photographs of how Santana's body was allowed to rip and decay away to honestly and fairly see that no reasonable official could not have known the inmate was at excessive risk to her health and safety. No person should be forced to live through rippina and rottening away, leaking infection and pus and blood all over themselves. No person living on the outside would reasonably reach such disrepair. Medical providers at the outside hospital attempted to interviene to no avail and were lied to by defendants. Futher evidence Ms. Santana must be allowed to proceed in her 1983 suit. See Cantu v. Jones, 293 F. 3d 839, 844 (5th Cir. 2002). "A prison official cannot be found liable under the Eighth Amendment... unless the official knows of and disregards an excessive risk to inmate health and safety... the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

"[A]n Eighth Amendment claimant need not show that a prison official acted believing that harm would befall an inmate; it is enough that

18

official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. Id. at 843 n.8.

The conditions of confinement the Plaintiff has lived through are shocking. FMC Carswell claims to be a medical facility yet they lost their medical accreditations in 2017. News reports of medical neglect, suicides due to staff refusing to get help when asked, deaths of women who were watched as they suffered and begged officials for help and they were laughed at and called fakes. This Plaintiff is not the only one who is suffering from deliberate indifference, at Carswell, but she is one who is brave enough to come to the Court and ask for help and protection. FMC Carswell falsifies their medical paperwork for example see Plaintiff's own MDS form Exhibit # _____ it states:

1) That Plaintiff's sleeping on a "hospital bed" (Exhibit 10)
2) Compression garment - leg    (Exhibit 10)
3) Compression garment - girdle (Exhibit 10)

These misrepresentations are only a small peice of evidence to show that FMC Carswell is not accurately presenting true facts when it comes to the Plaintiffs case and living conditions. Those are all 100% false and have never been true or correct. The defendants wish to paint an image to the courts and outside that the Plaintiff is cared for and provided needed equipment and bedding. The Plaintiff will show these behaviors to be a proveable pattern of conduct in the evidence stage or even before if this Honorable Court requests so to be provided.

Reckless indifference to the truth is sufficient to satisfy the actual requirement of actual FRAUD: Actual fraud requires knowledge of the falsity and an intent to deceive. A showing of reckless indifference will be sufficient to satisfy the knowledge element. To establish knowledge based on recklessness, the conduct must exceed negligence and rise to a level of reckless disregard for the truth. A court may find recklessness based on a pattern of conduct or behavior. In addition, reckless indifference to the truth is sufficient to prove the requisite intent to deceive. Thus, a reckless disregard of the truth of a statement will fulfill both the

knowledge element and the intent to deceive element. In the Plaintiff's case she can present evidence of such conduct on behalf of the defendants; therefore, they are additionally guilty of fraud.
A few examples include but are not

1. Defendants Cates and Bollinger falsely state Plaintiffs in a hospital bed in her records; See Exhibit

2. Nurse Madelin falsely stated that she had never seen Ms. Santana nor had Santana sign paperwork for surgery; See Exhibit

3. Doctor Barthet falsely stated to outside surgeon that the vital wound vac was here at Carswell and that they could provide the needed care; (nurse ndan)

4. Cates falsely stated he had provided medical supplies to Santana and had examined her wound before issuing anti-botics

5. Bollinger falsely represents on record Santana has things listed on MDS (Exhibit 10) See Exhibit

6. Records falsely claim Santana was on antibotics See Exhibit

7. Timmons (See Exhibit 5, 6, 7) all different responses to care. Factually Santana NEVER received any treatments. Timmons falsifies reports.

21

Not only has Ms. Santana's Eighth Amendment rights been violated but fraud against her person has been committed to cover up the abuses and violations.

8. Bollinger placed in records she had an appoint for "surgery in a week". But tells Santana "I never said that to you, there's no surgeries schudled". (Santana needs records that are kept from her, this requires court allowing suit). Exhibit Q

9. Exhbit P shows over two weeks Santana recieved no care. 5·20·22 - 6·02·22; also Timmons only came to photograph Santana there was no supplies nor care. See affidavit of Santana and this response motion for statements made by Timmons. Futhermore additional affidavit from Heather Fuentes.

Annotation References

Supreme Court's construction of Civil Rights Act of 1871 (42 USCS § 1983) providing private right of action for violation of federal rights, 43 L.Ed.2d 833.

Federal constitutional guaranty against cruel and unusual punishment. 33 L.Ed 2d 932.

What provisions of the Federal Constitution's Bill of Rights are applicable to the states. 18 L Ed 2d 1388, 23 L Ed 2d 985.

Prison conditions as amounting to cruel and unusual punishment. 51 ALR 3d 111.

Classified to U.S. Supreme Court Digest, Lawyers' Edition

Criminal Law § 76, 78 - cruel and unusual punishment clause - standards

1. The cruel and unusual punishment < pg. 2547 clause of the Eighth Amendment proscribes more than physically barbarous punishments; the Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency, against which penal measures must

23

be evaluated.

Criminal Law § 78 - cruel and unusual punishment- what constitutes

2. Punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society, or which involve the unnecessary and wanton infliction of pain, are repugnant to the cruel and unusual punishment clause, of the Eighth Amendment.

See Jackson v. Bishop, 404 F.2d 571, 579 (CA8 1968); Trop v. Dulles, supra, at 101, 2 L. Ed. 2d 630, 78 S.Ct. 590; see also Gregg v. Georgia, supra at 173, 49 L. Ed 2d 859, 96 S.Ct. 2909 (joint opinion); see also Louisiana ex rel. Francis. v. Resweber, 329 US 459, 463, 91 L. Ed 422, 67 S.Ct. 374 (1947); Wilkerson v. Utah, supra at 136, 25 L. Ed 345.

These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do

so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture, or a lingering death", In re Kemmler, supra, the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. Cf. Gregg v. Georgia, supra, at 173, 49 L.Ed. 2d 859, 96 S Ct 2909 (joint opinion). The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation.

We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain", Gregg v. Georgia, supra, at 182-183, 49 L. Ed. 2d 859, 96 S Ct 2909.

## Conclusion

The Plaintiff prays this Court not act in haste by removing any of the named defendants as each has and does cause harm. All FACTS are impossible to show without moving forward. She request permission to add joiners later. She prays this Court grants and orders the

25

defendant to show cause.

Done This 21st Day of June 2024.

Humbly,

x Mombu Sontang Ccrand

Certificate of Service

I the undersigned do hereby certify this foregoing motion has been sent to the Clerk of this Court via US mail prepaid postage affixed. Further she request that a copy be provided to all parties via the CM/ECF system as she is detained and has no other means.

Done This 22nd Day of June 2024

Humbly,

x Maribel Santana Corona