IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARIBEL SANTANA-CERANO, | § § § | |
| Plaintiff, | § § | |
| V. | § § | NO. 4:24-CV-403-O |
| WARDEN FNU RULE, ET AL., | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the motion of Defendants Gabrielle Timmons and Damon Cates (together, "PHS Movants") to dismiss and the consolidated motion of Defendants Dr. Timothy Bollinger, Director of Nursing Lisa Bartlett, Nurse Marzena Kunysz, Nurse Terry Matherly, Nurse Tawney Nodland, and Family Nurse Practitioner Anastasia Sancho (collectively, "FMC Movants") to dismiss. The PHS Movants allege that they are entitled to absolute immunity. The FMC Movants each allege entitlement to qualified immunity. The Court, having considered the motions, the response, the reply, the record, and applicable authorities, concludes that the PHS Movants' motion must be **GRANTED** and the FMC Movants' motion must be **GRANTED IN PART**.

**I.    PLAINTIFF'S CLAIMS**

Plaintiff filed her complaint as a civil rights action seeking damages and injunctive relief, alleging that Defendants were deliberately indifferent to her serious medical needs arising out of cosmetic enhancement procedures done prior to her incarceration. ECF No. 1. The operative complaint is her amended complaint filed in response to the Court's order to replead. ECF No. 16.

Plaintiff alleges that she arrived at Federal Medical Center Carswell with an infected open wound in her right buttock, that she did not receive proper care, and that she was harmed by Defendants' deliberate indifference to her serious medical needs.[1]

Although Plaintiff referenced 42 U.S.C. § 1983 in her complaint, she is a federal prisoner and Defendants are employees of the U.S. government.[2] To the extent that she asserts violations of the Eighth Amendment's proscription against the infliction of cruel and unusual punishment, her claims are properly brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[3] She does not have claims under § 1983.[4]

To the extent that Plaintiff purports to add an additional claim through her response to the motions to dismiss, she has not sought leave to do so. *See Estes v. JP Morgan Chase Bank, N.A.*, 613 F. App'x 277, 280 (5th Cir. 2015) (a party must expressly seek leave to amend). Even if she had, leave would be denied since the claim she asserts, violation of 18 U.S.C. § 1035, is not one that she can prosecute. *Roop v. Southern Pharmaceutical Corp.*, No. 1:09-CV-222-M-D, 2010 WL 11643323, at *3 (N.D. Miss. June 30, 2010). There is no general right to bring a private action under federal criminal statutes. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *Rhodes v. McCall-N Ltd.*, No. 4:21-CV-04221, 2022 WL 3349229, at *4 (S.D. Tex. July 27, 2022).

---

[1] Plaintiff mentions other unrelated medical issues in her response, but they are not part of her complaint in this action.

[2] In her response to the motions to dismiss, Plaintiff makes the unsupported allegation that Defendants are employees of a third-party for-profit organization. ECF No. 40 at 13. Defendants have demonstrated that the FMC Movants are employees of the Federal Bureau of Prisons. ECF No. 42-1. In any event, as discussed herein, the government employment of the FMC Movants is not the deciding factor in the dismissal of the claims against certain of them.

[3] The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 ("FTCA"), provides the exclusive remedy for tort claims arising from the actions of government agencies and employees. 28 U.S.C. § 2679(b); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988). Plaintiff does not purport to bring any claims under the FTCA.

[4] The Court declines to dismiss Plaintiff's claims for the reason that she makes an erroneous argument in her response, as urged by Defendants in their reply.

## II.   GROUNDS OF THE MOTIONS

The PHS Movants allege that they are entitled to absolute immunity as employees of the U.S. Public Health Services ("PHS"); consequently, the Court lacks subject matter jurisdiction over the claims against them. The FMC Movants allege that even if the allegations of the amended complaint are true, Plaintiff has failed to state a claim against any of them and her claims must be dismissed pursuant to FED. R. CIV. P. 12(b)(6). Additionally, they assert the defense of qualified immunity. They also contend that claims that accrued before August 2, 2022, are time-barred.

## III.   APPLICABLE LEGAL STANDARDS

### A.   Rule 12(b)(1)

Dismissal of a case is proper under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). When considering a motion to dismiss for lack of subject matter jurisdiction, the court construes the allegations of the complaint in favor of the pleader. *Spector v. L Q Motor Inns, Inc.*, 517 F.2d 278, 281 (5th Cir. 1975). However, the court is not limited to a consideration of the allegations of the complaint in deciding whether subject matter jurisdiction exists. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The court may consider conflicting evidence and decide for itself the factual issues that determine jurisdiction. *Id.* Because of the limited nature of federal court jurisdiction, there is a presumption against its existence. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978); *McNutt v. General Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). A party who seeks to invoke federal court jurisdiction has the burden to demonstrate that subject matter jurisdiction exists. *McNutt*, 298 U.S. at 189; *Ramming v. United States*, 281 F.3d 158, 161

(5th Cir. 2001).

> **B.** **Rule 12(b)(6)**

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The purpose is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Further, the complaint must specify the acts of the defendants individually, not collectively, to meet the pleading standards of Rule 8(a). *Id.* at 676; *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020).

To survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. *Iqbal*, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Id.* In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its

4

judicial experience and common sense." *Id.* Dismissal is appropriate under Rule 12(b)(6) if "the complaint lacks an allegation regarding a required element necessary to obtain relief." *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006).

In considering a motion to dismiss for failure to state a claim, the court considers the complaint and documents attached to the complaint. *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021). "If an exhibit to a complaint contradicts an allegation in the complaint, the exhibit controls." *Stevenson v. Tocé*, 113 F.4th 494, 502–03 (5th Cir. 2024). The court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The court may also take judicial notice of matters of public record. *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

### C.     Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be "clearly established," that right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred," because

"[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. In *Hunter*, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

6

502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 580 U.S. 73, 79 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality but must be particularized to the facts of the case. *Id.* Thus, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

### D.     Deliberate Indifference

The Eighth Amendment proscribes cruel and unusual punishments, which the Supreme Court has interpreted to include deliberate indifference to serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For deliberate indifference to rise to the level of a constitutional violation, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation. *Id.* at 838. Deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires the plaintiff to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.[5] *See Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) (deliberate indifference not established when medical records indicated that plaintiff was afforded extensive medical care); *Nunley v. Mills*, 217 F. App'x 322, 324 (5th Cir. 2007) (delays, minor lapses, and prescribing wrong medication are insufficient to state a claim for deliberate indifference).

  **E.**  **Limitations**

The general rule is that a tort claim accrues at the time of the plaintiff's injury. *United States v. Kubrick*, 444 U.S. 111, 120 (1979). *See Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998) (statutory period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action). To the extent a plaintiff seeks to hold individual defendants liable

---

[5] The cases cited by *Gobert* do not explain what such exceptional circumstances might be. Whether to provide additional treatment is a classic example of a matter for medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino*, 239 F.3d at 756.

under *Bivens*, the general personal injury limitations period of the forum state applies. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). In Texas, the applicable limitations period is two years. *Gartrell*, 981 F.2d at 256–57.

IV.     ANALYSIS

    A.     PHS Movants

Defendants Timmons and Cates are commissioned officers in the PHS assigned to Federal Medical Center Carswell. ECF No. 35 at App. 1, App. 3. Timmons was serving as a physical therapist, *id.* App. 1, and Cates was serving as a physician assistant. *Id.* App. 3. They interacted with Plaintiff in those capacities. *Id.* App. 1 & App. 3.

Along with the armed service branches, PHS is designated as a "uniformed service" of the United States. *Diaz-Romero v. Mukasey*, 514 F.3d 115, 118–19 (1st Cir. 2008). Officers and employees of the PHS are entitled to absolute immunity from suit. 42 U.S.C. § 233(a) (providing that the remedy against the United States under the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2671–80, is exclusive of any other remedy for damages against officers and employees of PHS resulting from performance of medical, surgical, dental, or related functions). The Supreme Court has held that § 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment and specifically bars *Bivens* actions against them. *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). *See also Jenkins v. United States*, 733 F. App'x 218, 219 (5th Cir. 2018); *Walker v. Reese*, 364 F. App'x 872, 875 n.3 (5th Cir. 2010).

Timmons and Cates are entitled to absolute immunity and Plaintiff cannot proceed with her claims against them.

### B.     FMC Movants

### Dr. Bollinger

With regard to Dr. Bollinger, Plaintiff alleges that: he promised her "16 times to get her to surgery" but each time would state that he could not help her, ECF No. 16 at 10; he told inmate employees to go out into the lobby and tell her to go away or that he was out, *id.*; she would ask Bollinger to issue an order for medical care equipment and he refused every time, *id.* at 11; upon return from the hospital, Bollinger told her to go to her unit, *id.* at 13; Bollinger falsely stated that Plaintiff was in a hospital bed, *id.* at 20; Bollinger falsely represented that Plaintiff had the things listed on Exhibit 10, *id.*; and, Bollinger placed in the records that Plaintiff had an appointment for surgery in a week, Ex. Q, but then told her no surgeries were scheduled. *Id.* at 21.

First, the exhibits to which Plaintiff refers do not support her allegations. Exhibit 10, ECF No. 16-1 at 11,[6] rather than representing what Plaintiff has, simply reflects that she is authorized a donut cushion, a hospital bed, and a compression garment. Exhibit Q, ECF No. 16-1 at 55, reflects that Bollinger examined Plaintiff and noted that she had a follow up appointment in two weeks with plastic surgery and that she would be sent to an outside hospital. The document does not reflect that Plaintiff had an appointment for surgery in a week. It states that Plaintiff needs surgery to remove her implant, which is consistent with Plaintiff's handwritten note that Bollinger promised to send her for surgery. *Id.*

With regard to the remaining allegations, Plaintiff fails to provide any specific information and the records she has attached do not support them. For example, she fails to allege when Bollinger made the alleged promises for surgery. Her records do not reflect that she saw him

---

[6] The page number references to the exhibits are to "Page __ of 57" reflected at the top right portion of the document on the Court's electronic filing system.

sixteen times. And, as noted, Bollinger recognized the need for surgery, ordering that she be transferred to a local hospital. ECF No. 16-1 at 55. Likewise, Plaintiff does not provide any details with regard to the allegation that Bollinger began telling inmate employees to tell Plaintiff to go away, ECF No. 16 at 10, and that he "refused every time" to order unidentified "medical care equipment" for her. *Id.* at 11. The records she has attached reflect that Bollinger examined her and issued orders regarding her care. ECF No. 16-1 at 55. She simply has not alleged sufficient facts to support a plausible claim against Bollinger, much less to overcome his claim of qualified immunity.

### Nurse Bartlett

Plaintiff refers to "Dr. Barthett," ECF No. 16 at 12–13, and "Dr. Bartheit." *Id.* at 13, 20. FMC Movants believe that the references are to Nurse Bartlett, as she is not otherwise mentioned in the amended complaint. ECF No. 36 at 17. Plaintiff alleges that an unnamed hospital doctor informed Bartlett that Plaintiff must be on a wound vac within two hours of her return to Carswell and that Bartlett assured the hospital that the equipment needed was "here and ready to go." *Id.* at 12–13; *id.* at 20. Plaintiff does not allege any facts to show that Bartlett knew her statement about the wound vac (assuming it was made) was false. Moreover, Plaintiff's Exhibit 29, ECF No. 16-1 at 41, reflects that a hospital social worker was notified by an unidentified person at Carswell that it could handle the wound vac, but that Plaintiff was sent back to the hospital the same day she was discharged because Carswell medical staff "do not handle wound VAC therapy." The note further reflects that Plaintiff would be discharged back to Carswell with at least a week of wound care supplies until Carswell could obtain its own supplies. *Id.* Another of Plaintiff's exhibits reflects that the contact person at Carswell was "David Prison Liaison," who clarified that Carswell

11

was missing a part of the equipment needed for wound dressing. The part had been ordered but would not arrive until after the July 4 holiday. *Id.* at 39. Even assuming Bartlett made the statement alleged, Plaintiff has not alleged facts to show that she engaged in conduct designed to harm Plaintiff. At best, the conduct alleged was negligent. *See Welsh v. Diaz*, No. 5:22-CV-237-BQ, 2024 WL 4451758, at *24 (N.D. Tex. June 21, 2024), *report and rec. adopted*, 2024 WL 4200564 (N.D. Tex. Sept. 16, 2024); *Butler v. UTMB*, No. H-09-0519, 2010 WL 358562, at *1 (S.D. Tex. Jan. 29, 2010) (miscommunication does not show subjective intent to harm).

FMC Movants overlook the second part of Plaintiff's claim against Bartlett—that she and Nodland forcibly removed Plaintiff's bandage revealing the wound and forced her to sit on the wound for hours then to ride sitting up in a car on the trip back to the hospital. ECF No. 16 at 13. Although the records indicate that Plaintiff was not forced to sit for hours, given the serious nature of the wound—that "over 90% of [Plaintiff's] right buttock [was] gone from rot"— and the fact that Plaintiff had just been discharged from the hospital following surgery, the Court is satisfied that Plaintiff has stated a claim as to the forcible removal of the bandage. As a matter of common sense, every reasonable person would have known not to forcibly rip the bandage off Plaintiff in this situation. And, given the repeated verbal abuse, it is plausible that Bartlett intended to cause Plaintiff harm in the removal of the bandage.

### Nurse Kunysz

Plaintiff alleges that when she went to the clinic on June 4, 2022, very sick with a high fever, in pain, crying for help, and leaking all over herself, Nurse Kunysz coldly said, "That's what you get when you put implants in your body so don't cry now." ECF No. 16 at 6. Upon leaving the clinic, Kunysz said, "Suck it up you wanted to look good now you're paying." *Id.* at 7. Each

day after her return to the unit, Plaintiff was subjected to Kunysz's belittling comments like "you did this to yourself" and "you got what you deserved." *Id.* at 8. The documents attached to the complaint reflect that Kunysz performed safety checks on Plaintiff on several occasions, ECF No. 16-1 at 9, 10, 12, and twice made notes of encounters with her. *Id.* at 35, 53.

Harassment and verbal abuse do not amount to the type of infliction of pain prohibited by the Eighth Amendment. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Robertson v. City of Plano*, 70 F.3d 21, 24 (5th Cir. 1995) (use of words, no matter how violent, does not amount to a constitutional violation). Although the Court does not condone rude or insensitive treatment, "rudeness or lack of compassion alone are insufficient to support a cause of action." *Atkins v. Lofton*, 373 F. App'x 472, 473 n.1 (5th Cir. 2010). *See also Hollyfield v. Hurst*, 796 F. App'x 817, 820 (5th Cir. 2019) (rude or insensitive behavior is disgraceful but does not amount to deliberate indifference). The allegations go further, however, and reflect that each day the week before her surgery Plaintiff approached Kunysz at sick call for help with obvious medical needs arising out of the condition of her buttocks and Kunysz would turn her away and refuse to provide any care. ECF No. 16 at 7–9. The one encounter note from that period of time reflects that Kunysz knew that Plaintiff was experiencing a worsening of the infection and increase in purulent discharge but it does not reflect that Kunysz provided any care. ECF No. 16-1 at 35. From the statements Kunysz made, the Court can infer that she intended Plaintiff to suffer for what Kunysz perceived to be self-inflicted wounds. Plaintiff has stated a claim against Kunysz. *See Loosier v. Unknown Medical Doctor*, 435 F. App'x 302, 306–07 (5th Cir. 2010) (citing cases including *Perez v. Anderson*, 350 F. App'x 959, 961–62 (5th Cir. 2009)) (deliberate indifference alleged where prison official knew plaintiff was in excruciating pain and failed to provide medical treatment);

13

*Harris v. Hegmann*, 198 F.3d 153, 159–60 (5th Cir. 1999) (ignoring repeated requests for medical treatment and complains of excruciating pain satisfied deliberate indifference standard).

### Nurse Matherly

Plaintiff alleges that Nurse Matherly told her that she did not belong in medical and she just wanted to look good so she did not get Matherly's concern. ECF No. 16 at 11. Further, Matherly gave Plaintiff the forms to sign for surgery and informed her that she should not eat or drink after midnight beforehand, but no one came to get Plaintiff for surgery. The clinic called to inquire and Matherly lied, saying that Plaintiff had never signed any forms and that Matherly had not seen her. *Id.* at 11, 20. A counseling form signed by Plaintiff reflects that she was instructed not to eat or drink after midnight on June 21, 2022. ECF No. 16-1 at 36 (staff signature illegible). A further note reflects that Plaintiff was scheduled for surgery on that date. *Id.* at 35. Plaintiff herself describes the failure to have surgery as scheduled a mistake that Matherly attempted to cover up. ECF No. 16 at 11.

As noted, insensitive words do not amount to a denial of medical care under the Eighth Amendment. Likewise, deliberate indifference is a degree of culpability beyond negligence or even gross negligence. *James v. Harris Cnty.*, 577 F.3d 612, 617–18 (5th Cir. 2009). Even if the delay was intentional, and the facts pleaded do not support that conclusion, Plaintiff does not allege, and her records do not reflect, that the delay caused her substantial harm. *Fuller v. Harris Cnty.*, 294 F. App'x 167, 168–69 (5th Cir. 2008).

### Nurse Nodland

Plaintiff alleges that Nurse Nodland joined in the verbal abuse of Nurse Kunysz. ECF No. 16 at 8. Nurse Nodland did not believe Plaintiff when she inquired about the wound VAC upon

her return from surgery at the hospital and told her to go to her unit. When Plaintiff refused, Nurse Nodland forcibly removed Plaintiff's bandages and exposed her wound, revealing that over 90% of her right buttock was gone as a result of rot. *Id.* at 13. Nurse Nodland forced Plaintiff to sit on her wounds for hours and then sit in a car for the ride back to the emergency room. *Id.*

Again, Nurse Nodland's words alone are insufficient to state a claim for deliberate indifference. As with Nurse Bartlett, however, the Court is satisfied that Plaintiff has stated a claim for deliberate indifference in the forcible removal of her surgical bandages. Given the extensive verbal abuse Plaintiff alleges, it is plausible that Nodland intended to cause Plaintiff harm in ripping off the bandage.

### Nurse Practitioner Sancho

Plaintiff alleges that on May 19, 2022, Sancho came by to make rounds and refused to help when Plaintiff said she had an infection and open wound, needed supplies to care for the wound, and should not be in a cell with three other women. ECF No. 16 at 2–3. Sancho replied with disdain that there was nothing she could or would do for Plaintiff. *Id.* at 3. Plaintiff was left in the same cell for 17 days without medical help, supplies, or pain medication while the infection got worse and the hole ripped further open. *Id.* at 5. The records she attaches to the amended complaint show otherwise. In particular, Plaintiff was examined by another provider on May 19, ibuprofen was prescribed, and Plaintiff was counseled about wound care and access to care. ECF No. 16-1 at 27. She was again examined and evaluated for wound care the next day and a request for consultation with plastic surgery was made. *Id.* at 6.

Plaintiff has not alleged sufficient facts to state a claim against Sancho. Even if she had, she cannot overcome the defense of qualified immunity.

15

### C. Limitations

FMC Movants erroneously contend that because they were served on August 2, 2024, any of Plaintiff's claims that accrued before August 2, 2022, are barred by limitations. Under Texas law, a plaintiff must both file suit and serve process on the defendants within the limitations period or the claim will be barred. *See Henderson v. Republic of Tex. Biker Rally, Inc.*, 672 F. App'x 383, 384 (5th Cir. 2016). The mere filing of suit will not interrupt or toll limitations. *Rigo Mfg. Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex. 1970). As Plaintiff notes, however, service of process was out of her hands in this case. ECF No. 40 at 12. And, indeed, the Fifth Circuit long ago determined that although the court looks to state law to determine the applicable limitations period, the court does not borrow the state's service provisions. *McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998). *See Manieri v. Layirrison*, 200 F.3d 814, 1999 WL 1093452, at *2 (5th Cir. 1999). Plaintiff timely commenced this action by the filing of her complaint and none of her claims are barred by limitations.

## V. CONCLUSION

For the reasons discussed, the motion of PHS Movants is **GRANTED** and Plaintiff's claims against them are **DISMISSED** for want of jurisdiction. The motion of FMC Movants is **GRANTED IN PART** and Plaintiff's claims against Defendants Bollinger, Matherly, and Sancho are **DISMISSED** with prejudice. The FMC Movants' motion is **OTHERWISE DENIED**.

The Court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of the claims against Defendants Timmons, Cates, Bollinger,

Matherly, and Sancho.

**SO ORDERED** this **8th day** of **January, 2025**.

_(signature)_
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**